[Civ. No. 24726. Second Dist., Div. One. Dec. 23, 1960.]

VINCENT J. FLORO, Appellant, v. ROBERT P. LAWTON et al., Respondents.

Lawrence J. Yanover for Appellant.

George W. Rochester, in pro. per., Crider, Tilson & Ruppé and Henry E. Kappler for Respondents.

FOURT, J.—This is an appeal from a "judgment of non-suit" in favor of defendants in a malpractice action.

A résumé of some of the facts is as follows:

Mr. and Mrs. Floro and Mr. and Mrs. Burke lived approximately across the street from each other in Whittier. Mrs. Burke claimed that Mr. Floro had attempted to molest her on Saturday afternoon, August 6, 1955. On the next day, Sunday, at about 7 p. m., the Burkes, after talking with the Floros (at which time alleged slanderous remarks allegedly were made), went to the police station and there apparently Mrs. Burke related what had occurred and she wrote out and signed a statement which set forth what had taken place in the episode of Saturday afternoon and also signed another statement which the police presented to her for signature. The latter statement was entitled "Citizen's Statement on Arrest By Citizen." It is a letter-size, capital-lettered, printed form with blank spaces provided therein to be filled in by the police. The latter statement set forth that a felony had been committed in the presence of Mrs. Burke, namely: "836-*3*220 PC (Attempted Rape) 242 PC (Battery)" and further set forth:

"AND I HEREBY MAKE A CITIZEN'S ARREST OF (HIM) (HER) FOR THE ABOVE DESCRIBED OFFENSE AND I HEREBY DIRECT THE

WHITTIER POLICE DEPARTMENT TO ASSIST ME IN TAKING (HIM) (HER) INTO CUSTODY PURSUANT TO MY ARREST OF (HIM) (HER). I WILL APPEAR AT THE WHITTIER MUNICIPAL COURT ON 8-7 —, 1955, AT 9:00 A.M. AND WILL AT THAT TIME SIGN A (MISDEMEANOR) (FELONY) COMPLAINT AGAINST

VINCENT FLORO FOR THE ABOVE DESCRIBED OFFENSE.
_(Name of Suspect)_

> "/s/ Mrs. Helen C. Burke
> (Complainant)
> "OR 95202
> "DATE AUG. 7, , 1955
> "TIME 7:20 P. M."

It is noted that Mrs. Burke was caused to promise to be in the Municipal Court at 9 a. m. of that same day, namely Sunday, when according to the statement itself it was at the time of signing thereof 7:20 p. m. Sunday.

After Mrs. Burke signed the statements, the police, apparently in uniform, went to Floro's house at about 9 p. m. on Sunday, August 7, 1955, and placed Mr. Floro under arrest. Mr. Floro himself testified that the police came to his house and said, "You are under arrest" and told him of the code sections which were involved. There is nothing in the record to the effect that the police told Mr. Floro that they were acting for Mrs. Burke or for anyone other than themselves in the course of their duty. Neither of the Burkes was present at the arrest nor was either of them at the jail and talked with or said anything to Floro with reference to any arrest or otherwise. Mrs. Burke testified that she had not asked the police to arrest Mr. Floro but that she had related to them what had occurred and that she wanted protection from him. Mr. Floro was taken to the jail by the police where he talked to his lawyer, Robert P. Lawton. Mr. Floro was released the next morning, that is, Monday, on a writ of habeas corpus. The petition for the writ recites that Vincent John Floro was being "held on suspicion of 220 P.C. and 242 P.C." and that no bail had been set. The judge set bail which Mr. Floro furnished, ordered him released upon the bail and set the writ for hearing on Thursday, August 11, 1955. Mrs. Burke talked with a deputy district attorney and the police on Monday morning, August 8, 1955, and it was there and then determined that a complaint would not be filed, although the prosecutor indicated that in his opinion a conviction could be secured. Mrs. Burke apparently was not desirous of prosecuting Mr. Floro

but did want him to leave her alone and wanted protection from his activities.

Mr. Floro was in the office of his attorney, Robert P. Lawton, later on Monday, August 8, 1955, and at that time executed a contract entitled "RETAINER" with Lawton. That agreement provides in part as follows:

"RETAINER

"THE UNDERSIGNED, hereinafter called the client, hereby Retain ROBERT P. LAWTON Attorney-at-Law, hereinafter called the attorney to:

defend the undersigned & litigate

matters agst [sic] Mr & Mrs Bob Burke

and agrees that the attorney is empowered to perform the said services for and on behalf of the client, and in his name, and to do all things necessary, appropriate or advisable, or which the attorney may deem necessary, appropriate or advisable, thereto whether by instituting and maintaining to completion an action or actions or other legal proceedings, or otherwise, either before or after Judgment, or Judgments.

"As compensation for the services of the attorney, the client will pay the sum of 275.00 Dollars in cash and the further sum of — Dollars payable — and in addition thereto 33⅓ per cent of any money or property paid, received or collected, by action, compromise or otherwise, upon or in satisfaction of any claim, or recovery made, incident to, or as a result of, the said services.

". . . . . . . . . .

"Both the attorney and client will use their best efforts in furthering the purposes of this retainer and in obtaining the necessary evidence and attendance of witnesses."

It is noted that the agreement does not provide for the bringing of any particular type or character of action. Apparently, whatever was to be done was left largely to the discretion of Lawton.

An action, which will sometimes hereinafter be referred to as the previous action, was instituted in the Superior Court in Los Angeles County by Vincent J. Floro, hereinafter referred to as Floro, against Robert M. Burke, hereinafter referred to as Burke, and Helen Burke, his wife. In Count I of that complaint, which was prepared and filed by Robert P. Lawton, hereinafter referred to as Lawton, on August 31, 1955, the plaintiff alleged that Burke had slandered him by saying

to Mrs. Floro, in the presence of others, in effect that Floro had "attempted to rape" Mrs. Burke and that as a result of such accusation Floro had been damaged. In Count II against Burke, Floro alleged that Burke had slandered him by saying substantially the same thing as alleged in Count I. In Count III which was against Burke and Mrs. Burke, Floro charged that defendants caused his arrest upon false and malicious charges of assault; that plaintiff was, at the instigation of defendants, taken into custody by police officers and forced to stay in jail overnight; that plaintiff was released on a writ of habeas corpus on a bond of $2,000; that said complaint was withdrawn and dismissed and plaintiff was discharged and further prosecution of plaintiff was abandoned; that the arrest and imprisonment were malicious to plaintiff's great damage. In Count IV against Burke and Mrs. Burke, plaintiff, by reference, adopted in most part the allegations contained in the third count and further charged that the prosecution of plaintiff was instituted maliciously and without cause and that plaintiff was damaged thereby. The plaintiff asked for $100,000 from Burke and $50,000 from Mrs. Burke.

An answer was filed by the Burkes and the case was set for trial for January 10, 1957. A short time before the trial date Lawton ascertained that he would not be able to present the evidence at the trial because of a conflict in his calendar and he talked with George W. Rochester, an attorney, about doing the trial work. In effect the two attorneys agreed to divide the fee or returns from the case half and half. The procedure and the situation was explained to Floro and he consented that Rochester should try the case. A substitution of attorneys was executed and filed showing Rochester and Lawton to be substituted for Lawton as the attorneys for Floro in the case.

In preparation for the trial Rochester and Floro talked over the facts of the case and Rochester stated that he was not at all certain about being able to prove the false arrest, but that he would try. In this connection Floro testified that he (Floro) said at that time, "... fine ... I leave it up to you." Nothing further was said about the matter until about the time of trial. At the counsel table, just before the trial commenced Rochester attempted to explain to Floro the difficulty in proving the false arrest or false imprisonment and according to Rochester, Floro said, "You are the lawyer. I trust in you. If that is what you think, why you do as you please." According to Floro, he (Floro) said (with reference to Roch-

ester's statement that he was not sure he could prove false arrest, but that he would try), "Fine. I leave it up to you."

It is undisputed that Rochester caused to be put into evidence everything which was available by way of proof with reference to the entire matter and that no evidence which Floro wanted admitted was rejected. In other words, all of the facts with reference to the entire matter were before the judge.

Rochester was asked by the Judge, Wilbur C. Curtis (who died after the trial and before the start of the malpractice trial), if he cared to make an opening statement prior to the taking of any evidence. Rochester said:

"MR. ROCHESTER: I don't think there is any necessity to— the complaint states the cause of action and the facts. The two that we are pressing are the malicious prosecution and the slander. The allegation of false arrest—as your Honor knows, I came in on this case rather late. I just got substituted in on the matter. As I read it, I think that the false arrest, if any, merges with the malicious prosecution, so we will introduce testimony to support the two causes of action, namely, slander and malicious prosecution."

The cause, after two days of trial, was argued and submitted on January 11, 1957. On January 24, 1957 the judge wrote a letter, a copy of which was sent to each of the attorneys for the respective parties wherein the judge set forth that judgment would be against Robert M. Burke, only, in the sum of $1,000 and further:

" . . . . . . . . . . .

"Counsel for the plaintiff is directed to prepare findings and judgment in conformity with the following, which is offered as the basis for the judgment as rendered.

"It will be remembered that counsel for the plaintiff at the commencement of the trial announced that no evidence would be offered in support of Count Three (false arrest), which therefore must be deemed abandoned, and the findings should so show.

" . . . . . . . . . . .

"Count Four, charging malicious prosecution, affords no basis for recovery, for the reason that no *judicial process* was instituted. The evidence showed nothing more than a citizen's arrest made with the assistance of police officers.

"The only judicial proceeding involved was the petition for habeas corpus, initiated by the plaintiff himself, upon the ground that he was falsely imprisoned without judicial process,

resulting in his discharge upon the ground that no prosecution had been instituted.

"The necessity for the institution of judicial proceedings as the basis for a charge of malicious prosecution may be found in all of the authorities upon the subject. Reference is particularly made to the case of *Hayashida* v. *Kakimoto*, 132 Cal.App. 743 [23 P.2d 311]; see also 32 Cal.Jur.2d page 87."

Rochester answered the letter of the judge on January 30, 1957, and pointed out in effect that the judge was in error in part with reference to the malicious prosecution count and cited authority therefor. He did, however, in a very practical and realistic fashion include with the letter, findings of fact and conclusions of law and a form of judgment in keeping with the directions of the judge. The findings were signed and the judgment was filed on February 6, 1957. In the findings it was set forth that ". . . no evidence was presented in support of said cause of action, counsel for plaintiff having announced at the commencement of the trial that no evidence would be offered in support of the third cause of action and by reason thereof, said cause of action is found to have been abandoned."

Finding No. VI reads as follows:

"VI

"The Court finds that in regard to the fourth cause of action against defendants, ROBERT M. BURKE and HELEN BURKE, and each of them, that from the evidence, as a matter of law, there was no judicial process instituted upon which a cause of action for malicious prosecution could be sustained."

After the judgment was entered there were talks between Lawton, Rochester and Floro with reference to appealing from the judgment. An offer of $750 was made by Burke to settle the judgment. There was substantial evidence to the effect that Burke was judgment proof; that all of his property was heavily encumbered and that the house he lived in was homesteaded. The attorneys indicated to Floro that the cost of an appeal would be disproportionate to what might be expected from the results of the appeal, even if they were successful in the appeal. No appeal was taken and Floro did receive the full amount of the judgment and executed a satisfaction thereof. Floro did not pay the attorneys, Lawton or Rochester, their agreed-upon amount as provided in the written contract. Indeed, the file would seem to show that the satisfaction of the judgment was arranged for and completed by other attorneys hired by Floro without Lawton or Rochester knowing

about it until considerable time had elapsed after the satisfaction of judgment was filed in the records.

The complaint in malpractice filed December 24, 1957, by Floro against Lawton and Rochester is in three counts. The first count is against each of the attorneys and therein it is set forth that Mrs. Burke arrested Floro and caused the police to arrest him without a warrant upon a charge in writing that Floro had committed a felony; that he (Floro) was put in jail for 13 hours; that Mrs. Burke acted unlawfully; that he suffered damages from the false arrest and imprisonment; that on August 8, 1955, he entered into a written contract with Lawton whereby he hired Lawton to prosecute and conduct an action against the Burkes for false imprisonment, slander, malicious prosecution; that Lawton undertook the employment and agreed to perform the same in a skillful manner as his attorney; that Lawton substituted Rochester with him as his attorney; that *each of said attorneys negligently failed to offer any evidence in support of the false imprisonment action* and the judge found that said cause had been abandoned; that Mrs. Burke was able to respond in damages and that he was damaged thereby in the sum of $50,000. The second cause of action is against the two defendants and adopts the first five paragraphs of the first cause of action. Floro further alleged that he performed his promises of said contract; that he exercised diligence; that Mrs. Burke could have responded in damages amounting to $50,000; that each of the defendants-attorneys *failed to perform the contract in that they failed to offer evidence* in support of the cause of action for false imprisonment and that he was damaged in the amount of $50,000 thereby. In the third cause of action Floro adopts the first five paragraphs of the first cause of action and paragraphs II and III of the second cause of action and then alleges that on August 8, 1955, he entered into an oral contract with Lawton to perform the exact thing which he sets forth was agreed upon in the written contract of the same date. It is not stated whether the oral contract was entered into before or after the written contract was signed.

The defendants answered and, among other things, attached as an exhibit to their answer a copy of the retainer contract which had been executed by Lawton and Floro and denied in effect that there was any agreement to file any certain action as alleged by Floro and denied any negligence and denied that there was any oral contract. It is interesting to note that on at least two occasions in the early stages of

this case Floro swore under oath that he had not signed the contract which bore his signature and that the document was false and spurious and not a copy of the contract which he had made and entered into. Later, however, he apparently became convinced that it was the contract which he had executed.

In his brief Floro states that his theory is that but for the abandonment of the cause of action for false imprisonment by defendants he would have recovered a judgment against Mrs. Burke, that his action is predicated upon the negligence of defendants and their breach of their agreement to litigate the cause of action for false imprisonment.

Appellant asserts: (1) that he had a cause of action for false imprisonment against Mrs. Burke; (2) that she was financially able to respond to a money judgment; (3) that Lawton is jointly liable with Rochester; (4) that Rochester abandoned his cause of action; (5) that the court erred in sustaining an objection to a certain exhibit; (6) that but for the abandonment he would have been granted a judgment against Mrs. Burke; (7) that both lawyers are liable upon both theories, namely negligence and breach of contract; and (8) that the court erred in granting a nonsuit.

With reference to appellant's first contention it may be that he may have had in a very technical sense a claim for a false arrest or false imprisonment, but to prove the claim and to collect damages therefor is a very different thing.

In *Singleton* v. *Perry*, 45 Cal.2d 489, 494 [289 P.2d 794] it is said:

"As stated, plaintiff's action is both for false imprisonment and for malicious prosecution. As the court says in *Neves* v. *Costa* (1907), 5 Cal.App. 111, 117-118 [89 P. 860], ' "False imprisonment is the unlawful violation of the personal liberty of another" (Pen. Code, § 236), the interference with the personal liberty of the plaintiff in a way which is absolutely unlawful and without authority. Malicious prosecution is procuring the arrest or prosecution of another under lawful process, but from malicious motives and without probable cause.

" 'The provocation, motive and good faith of the defendant in an action for false imprisonment constitute no material element in the case and can be considered only where punitive or exemplary damages are asked, and then only as affecting the measure of such damages. On the other hand, malice and want of probable cause are the gist of the

action for malicious prosecution. Without allegation and proof of both, the action will fail. [Citation.]

 " 'No one can recover damages for a legal arrest and conviction; therefore, in cases of malicious prosecution it becomes necessary to await the final determination of the action. But the same principle does not apply to an action for false imprisonment, as the form of action is based upon an illegal arrest and no matter *ex post facto* can legalize an act which was illegal at the time it was done. . . .' " See also *Dragna* v. *White,* 45 Cal.2d 469, 473 [289 P.2d 428] where the court said:

". . . We are satisfied that the better rule is that where the arrest is lawful, subsequent unreasonable delay in taking the person before a magistrate will not affect the legality of the arrest, although it will subject the offending person to liability for so much of the imprisonment as occurs after the period of necessary or reasonable delay. (See Rest., Torts, § 136, com. d; *Atchison, T. & S.F. Ry. Co.* v. *Hinsdell,* 76 Kan. 74 [90 P. 800, 13 Ann.Cas. 981, 12 L.R.A. N.S. 94]; *Oxford* v. *Berry,* 204 Mich. 197 [170 N.W. 83]; *Stromberg* v. *Hansen,* 177 Minn. 307 [225 N.W. 148]; *Teel* v. *May Department Stores Co.,* 348 Mo. 696 [155 S.W.2d 74, 137 A.L.R. 495]; *Brown* v. *Meier & Frank Co.,* 160 Ore. 608 [86 P.2d 79]; see also Bohlen and Shulman, *Effect of Subsequent Misconduct Upon a Lawful Arrest,* 28 Columb. L. Rev. (1928) 841, 849, 852, 858.)"

 In this case it must be remembered that Mrs. Burke was not present at the arrest or at the police station after the arrest; she made no statement to Floro about his being under arrest or anything of that nature. She did not participate in anywise in the arrest unless by the Citizen's Statement she may indirectly be brought into the matter. She did sign the form of the police department which was obviously designed to attempt to remove the police from any responsibility in performing their duty. Such an effort on the part of the police to detach or insulate themselves from the burdens of their office ought to be carefully scrutinized whenever the question arises as to who it was who made an arrest. Such a form was apparently used in the case of *Peterson* v. *Robison,* 43 Cal.2d 690 [277 P.2d 19]. In that case the court said at page 695:

"No liability can be predicated merely on defendant's reporting to the police facts concerning the damaging of his car and the city's parking meter. A private person does not become liable for false imprisonment when in good faith he

gives information—even mistaken information—to the proper authorities though such information may be the principal cause of plaintiff's imprisonment. [Citations.]

"False imprisonment is defined by statute as 'the unlawful violation of the personal liberty of another.' (Pen. Code, § 236.) ▄▄▄ Imprisonment pursuant to a lawful arrest is not tortious. [Citation.] . . .

" . . . . . . . . .

▄▄▄ ". . . A private citizen who assists in the making of an arrest pursuant to the request or persuasion of a police officer is not liable for false imprisonment. (*Mackie* v. *Ambassador Hotel etc. Corp.* (1932), 123 Cal.App. 215, 222 [11 P.2d 3]; see 29 A.L.R.2d 825.) It would be manifestly unfair to impose civil liability upon the private person for doing that which the law declares it a misdemeanor for him to refuse to do. (See Pen. Code, § 150 [misdemeanor for man over 18 to refuse officer's lawful request for aid in arrest]; see also *id.,* § 839.)"

In a note in 44 California Law Review 595 wherein the last cited case is discussed, it is said at page 602:

"It should be observed here that no California case has been found which makes a basic distinction between the definitions of arrest and imprisonment. Dean Prosser writes that false imprisonment is 'sometimes called false arrest.' (Prosser, Torts 48 (2d ed. 1955).) But it is clear that an action for false imprisonment may be maintained without the necessity of pleading or proving an unlawful arrest. Conversely, it would seem that every unlawful arrest entails a false imprisonment. Thus, false imprisonment is a broader term than false arrest.

"Though probably not necessary to the decision of most cases, it is helpful here to distinguish the two terms. The obvious difference is one of scope: an 'arrest' is the initial taking of the person, while 'imprisonment' encompasses the whole of the period during which the person is detained. Consequently, the 'imprisonment' of a person includes his 'arrest,' but once an 'arrest' is accomplished and while the 'imprisonment' continues, his subsequent 'arrest' is by definition impossible. (This is not to say that a transfer of custody is impossible. It is only impossible for an initial taking into custody, *i.e.,* an arrest, to occur while custody is retained. See *Van Fleet* v. *West American Ins. Co.,* 5 Cal.App.2d 125, 128, 42 P.2d 378, 379-380 (1935).) It is submitted that the quoted code sections, characterizing arrest as a 'taking into

custody' (Cal. Pen. Code, § 834, . . .) and false imprisonment as the more general 'unlawful violation of the personal liberty of another,' (Cal. Pen. Code, § 236, . . .) reinforce this conclusion. (See ALI Code of Criminal Procedure, § 18 (1930) : 'Arrest is the taking of a person into custody in order that he may be forthcoming to answer for the commission of an offense.' Compare Restatement, Torts, §§ 112 and 35 (1934)."

In *Gogue* v. *MacDonald*, 35 Cal.2d 482, 487 [218 P.2d 542, 21 A.L.R.2d 639], it is said :

". . . It is also noted in Prosser on Torts at pages 74-75 (citing Salmond, Law of Torts, 8th ed. 1934, 378), that the policy in support of the prevailing rule is to accord to a person the privilege of making reasonable efforts to bring his case properly before the court; that consequently false imprisonment will not lie where he has attempted to comply with the legal requirements and fails to do so through no fault of his own; but that he is liable in malicious prosecution for misuse for an improper purpose of legal process.

"It follows that where, as here, the defendant reports the facts to the magistrate, takes no active part in the arrest but leaves the matter to the public officials and no bad faith appears, he is not liable merely because the facts he has stated to the magistrate do not constitute a public offense." (See an analysis of the problem and the cited case in 24 So. Cal. L. Rev. 130.)

It is easily apparent that Rochester had some very well-founded doubts under the circumstances as to whether Floro had been unlawfully arrested and falsely imprisoned and whether he, Rochester, should urge the cause of that particular count in the trial. Rochester did feel, however, that Floro had been slandered and that there was a malicious prosecution by the Burkes and proceeded accordingly. Floro himself said in effect to Rochester that under the circumstances he, Rochester, should go ahead and use his own best judgment which was the only reasonable thing Floro could say because he, Floro, knew nothing of the technicalities of the law involved and Rochester was an experienced and able trial lawyer.

As to whether Mrs. Burke was financially able to respond to a money judgment, the record without question seems to indicate that she was not. She was unable to give any information of consequence about her assets, except that practically everything she had was heavily encumbered. The plaintiff provided no evidence indicating the value of any of the equity, if any, in any of her property. Admittedly, a

homestead was on the house in which the Burkes lived. The burden was upon the plaintiff to prove that Mrs. Burke was solvent; he produced no evidence as to her income or as to any clear assets, or as to value of any equity. She testified that she and Burke had to borrow money to pay off the judgment in the previous case, that they had no worldly goods which were not mortgaged and that she was worth nothing. There was no showing that Mrs. Burke had any insurance protection for such a situation. (*Hammons* v. *Schrunk,* 209 Ore. 127 [305 P.2d 405].)

We think there is no doubt that if Rochester is liable then, under the circumstances of this case, Lawton is also liable. Respondents have cited the case of *Wildermann* v. *Wachtell,* 149 Misc. 623 [267 N.Y. S. 840], to the effect that where the client is informed of the necessity and reason for his attorney's retaining another lawyer for certain purposes and the client approves such employment, that then the client cannot recover from the original attorney for the negligence of the associated attorney. However, see *Senneff* v. *Healy,* 155 Iowa 82 [135 N.W. 27]; *Hill* v. *Curtis,* 154 App. Div. 662 [139 N.Y. S. 428]. The attorneys in this case were to divide the fee, if and when it was collected and each was responsible to Floro. (See 47 Harv. L. Rev. 1056.)

Appellant insists that the letter of the judge to the attorneys wherein he set forth his views of the case after the trial and Rochester's answer thereto should have been received into evidence as constituting an admission by Rochester that he had abandoned the third cause of action in the previous trial. We think the ruling of the trial judge was correct, but assuming that it was not proper and assuming that the letters had been received into evidence, the result would have been the same. Rochester was a very practical and realistic trial lawyer. The judge had indicated by letter that he was going to award a judgment to Rochester's client for a stated sum in a stated matter and that he was ruling against Rochester in other matters. Surely a trial lawyer is not to be charged and convicted of malpractice under the circumstances for yielding to the opinion of the judge with reference to the matters then under consideration. There were perhaps some courses which later could have been brought into play but a successful trial lawyer does not usually engage in letter-writing contests with the judge who is about to determine a cause in which he is vitally interested.

Appellant now argues that but for the ''abandon-

ment'' of the third cause of action he would have been awarded a collectable judgment against Mrs. Burke. There was in fact no abandonment of the cause by Rochester. The trial judge in the previous case throughout the trial asked certain questions and made rulings which give every indication that he did not at that time consider the third cause of action abandoned. Counsel for the Burkes did not conduct himself as if the count had been abandoned. The trial judge in this case had before him all of the evidence of the previous trial and he had the right to determine that the trial judge in the previous case was wrong in his determination. (See *Pete* v. *Henderson,* 124 Cal.App.2d 487, 490 [269 P.2d 78].) The fact that Judge Curtis erroneously analyzed the evidence is not the fault of Rochester and Lawton. The fourth cause of action contained all of the necessary allegations for a cause of action for false arrest or false imprisonment as well as a cause for malicious prosecution. If there was error upon the part of Judge Curtis, the lawyers could reasonably agree that there was error in at least two matters, namely, the finding that the third cause of action was abandoned and the finding that the law was against the plaintiff on the fourth cause of action, the plaintiff had the right to appeal. He did not do so. There was no obligation on the part of Rochester and Lawton to take an appeal and in fact they should not have done so without the consent of their client and he, Floro, plainly stated that he did not want to appeal. Instead, Floro went to other attorneys and, after some maneuvering, collected the judgment in full and gave a full satisfaction therefor without compensating Rochester and Lawton for their services under the written contract. It would seem that when Floro entered the satisfaction of the judgment in the previous case, that is, when he voluntarily accepted in full settlement the amount awarded to him by the court he then barred himself from further action in the proceeding. He accepted the amount without an appeal and thereby precluded the respondents in this case from ever in anywise correcting the erroneous judgment. He prevented the judicial ascertainment of the correctness of Judge Curtis' judgment and he should not now be heard to complain to the effect that he did not get enough money in the first place.

 Appellant contends that respondents are liable upon the theory of negligence as well as upon the theory of a breach of contract. It is true that a client can sue on the contract if there is one and upon the theory of negligence, and that is

exactly what the appellant did in this case. However, it makes little difference in this instance because, under the contract, the attorneys simply impliedly contracted to exercise a degree of care, skill and knowledge which would in effect be required by the negligence standard.

Much has been written about what constitutes negligence upon the part of a lawyer in his practice. (See *National Savings Bank of the District of Columbia* v. *Ward,* 100 U.S. 195 [25 L.Ed. 621].) It has, however, never been spelled out with any degree of accuracy or certainty and no formula has been devised which will determine just when a lawyer, after losing a case, may not be chargeable with negligence or malpractice.

The lawyer occupies an anomalous position. He practices a profession but in doing so he carries on a business; he is an officer of the court and as such he should not attempt to evade or impede the orderly administration of justice; he is the agent of a citizen in matters of dispute between citizens or between the citizen and the state; and at the same time and in all things he must pursue the course which is consistent with recognized professional conduct.

It is stated in 69 New Jersey Law Journal 265, reprinted in Insurance Law Journal Number 279 (1946) 194, 200 in an article titled "The Lawyers Liability for Alleged Mal Practice":

"And so it appears to be the law in all jurisdictions that an attorney, as the physician and surgeon, is liable in a proper action for all damage resulting to a client from his negligence within the purview of his employment; that he is required to be reasonably conversant with the well-known rules of. law and practice and procedure and the provisions of the statutes in his own state. He is not holden for errors in judgment nor in cases where well-informed attorneys entertain different views concerning a proposition of law which has not been settled. He is not a guarantor of the soundness of his opinions but is liable for the lack of such skill and diligence as are exercised by members of his profession in his locale. He may be sued in tort for negligence or in assumpsit for breach of implied contract existing between counsel and client and under some circumstances may be impleaded to all intents and purposes as if he were an original defendant and even required to respond in exemplary damages in isolated instances." (See also 13 Temple L. Q. 530; 19 Brooklyn L. Rev. 243; 12 Vanderbilt L. Rev. 755; 60 W. Va. L. Rev. 225; 24 Cal. L. Rev. 39.)

It would appear that the possibility of a malpractice action is an occupational hazard for a lawyer. Of necessity he cannot win every case and there is always the possibility of his having as a client an irascible person who tenaciously clings to the belief, in the face of all evidence to the contrary, that his claim is robust and that the claim of his opponent is weak, and that it would be next to impossible for any lawyer to do otherwise than to secure a judgment as and for all that he has demanded.

It is admitted in this case that the lawyers did not warrant, guarantee or insure the client's cause.

The problem arises whether the claimed negligence is a matter of law or a question of fact. In this case the plaintiff did not put on any expert witness to testify in the matter. In *Gambert* v. *Hart*, 44 Cal. 542 an attorney, among other things, failed to file and serve a proper notice of a motion for a new trial and the court said at page 552:

". . . In actions of this character against attorneys, the rule is well settled that when the facts are ascertained, *the question of negligence or want of skill is a question of law for the Court.* But there is a considerable conflict in the authorities as to the degree of diligence and skill to which an attorney shall be holden and for which the law implies that he contracts with his client. In the English Courts there have been cases decided by eminent Judges, in which the rule is laid down that an attorney is liable only for gross negligence, *crassa negligentia,* or for gross ignorance in the conduct of a cause, resulting in a damage to the client. (*Bakie* v. *Chandless*, 3 Camp. 17; *Purvass* v. *Landell*, 12 Clark and Finn. 91; *Godefroy* v. *Dalton*, 6 Bing. 468.) [Emphasis added.]

"The rule firmly established in this country by the weight of authority is that an attorney is bound to use ordinary skill and care in the course of his professional employment.

"In the late work of Shearman & Redfield on Negligence, section two hundred and twelve, it is said: 'The true rule of liability undoubtedly is, that an attorney is liable for a want of such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise.' This is the principle recognized in *Wilson* v. *Russ*, 20 Maine 421; *Goodman* v. *Walker*, 30 Ala., N.S., 482; *Cox* v. *Sullivan*, 7 Ga. 144, and numerous other American cases, and, we think is not only established by authority, but is founded in reason and justice.''

And, in *Gimbel* v. *Waldman*, 193 Misc. 758 [84 N.Y. S. 2d 888, 891] it is said:

"... The defendant argues, therefore, and I think, correctly too, that *no question of fact is involved but that the matter is one of pure law and that it would be improper to submit to a jury of lay persons the question whether the advice was correct*, or, if incorrect, whether in view of the state of the law on the subject the defendant was guilty of negligence. Hanna case, *supra*, 225 N.Y. page 583, 122 N.E. page 627; *Bank of China, Japan, & The Straits* v. *Morse*, 168 N.Y. 458, 470, 61 N.E. 774, 777, 56 L.R.A. 139, 85 Am.St.Rep. 676. [Emphasis added.]

"No attorney is bound to know all the law and he is therefore held not to be an insurer or a guarantor with respect to his judgment or advice and is not liable for every mistake that may occur in practice. 'But, as the law is not an exact science there is not attainable degree of skill or excellence at which all differences of opinion or doubts in respect to questions of law are removed from the minds of lawyers and judges. Absolute certainty is not always posible.' *Citizens' Loan Fund & Savings Ass'n* v. *Friedley*, 123 Ind. 143, 145, 23 N.E. 1075, 7 L.R.A. 669, 18 Am.St.Rep. 320. Thus the rule generally accepted is that if the law on the subject is well and clearly defined, has existed and been published long enough to justify the belief that it was known to the profession, 'then a disregard of such rule by an attorney at law renders him accountable for the losses caused by such negligence or want of skill; negligence, if knowing the rule, he disregarded it; want of skill, if he was ignorant of the rule.' *Goodman and Mitchell* v. *Walker*, 30 Ala. 482, 496, 68 Am. Dec. 134." [84 N.Y.S.2d.]

However, a review of the authorities leads us to the conclusion that if the Gambert case is the law in this state, then we hold to the minority view. (See 12 Vanderbilt L. Rev. 755.) If it is a question of fact then is the matter the subject of expert testimony? Without expert testimony the confusion could be great indeed in some situations (such as a matter involving trial tactics) because a jury would have no way of knowing what was proper and what was improper and would have no standard by which to compare the lawyers' actions. If experts are called in, then we have the battle of the experts or possibly the "conspiracy of silence." In any event it makes no particular difference in this case. If it was a question of law we think the court properly disposed of the matter.

If it was a question of fact, which required expert testimony, the plaintiff produced no expert testimony. If it was a question of fact and expert testimony was not required the plaintiff failed completely in several essential respects to establish his claim.

Under the breach of contract theory the plaintiff produced no evidence to the effect that respondents violated their agreement with Floro. There was no evidence of an oral contract.

In this case a thorough reading of all of the exhibits, documents, transcripts and briefs leads us to the conclusion that neither of the respondents was guilty of negligence nor did either of the respondents breach any contract with Floro. The plaintiff did not prove that he was entitled, under the circumstances, to win the original third cause of action and that he would have won it but for the defendants' negligence or breach of contract, nor did he show that Mrs. Burke was solvent. The plaintiff failed in producing the proof to establish his claim and the trial court properly granted a nonsuit as to both defendants. It is admitted that there was no chicanery here by respondents, yet they have been injured by virtue of this action in spite of the fact that they have prevailed because, among other things, they have had to engage in the debasing spectacle of defending themselves in an unmeritorious lawsuit to their embarrassment and to the detriment of the bar generally.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 13, 1961, and appellant's petition for a hearing by the Supreme Court was denied February 15, 1961.