[Civ. No. 642. First Appellate District.—September 29, 1909.]

## W. M. ELSOM, Appellant, v. F. H. MOORE, M. ABRAMS and DUNCAN McPHERSON, Respondents.

SALES—TITLE RESERVED UNTIL PAYMENT—RIGHT OF VENDOR TO ELECT.—Where a sale of personal property was made upon an understanding between the parties that the title was not to pass until payment therefor, the vendor has the right to treat the transaction as a sale, either absolute or conditional.

ID.—ELECTION OF VENDOR TO TREAT SALE AS ABSOLUTE—ACTION FOR GOODS SOLD AND DELIVERED—ATTACHMENT.—Though the purchaser made no payment, the bringing of an action against him by the vendor for goods sold and delivered, and the attachment of the goods therein as the purchaser's property, constituted an election by the vendor to treat the sale as absolute and unconditional.

ID.—RESALE TO THIRD PARTY — ACTION FOR CONVERSION — DELIVERY AND CHANGE OF POSSESSION—QUESTION OF FACT—INSTRUCTION.—Where the purchaser, prior to the attachment suit, resold the goods to a third party, who made demand upon the sheriff, which was disregarded by sale of the attached property, and such third party sued the sheriff and his bondsmen for conversion, it is held, upon a review of the evidence, that it was a question of fact for the jury whether there was such a delivery and continued change of possession as to make the transfer to plaintiff valid against the original vendor, under section 3440 of the Civil Code, and that the court, at the request of the defendants, properly gave an instruction submitting that question to the jury.

ID.—REVIEW OF INSTRUCTIONS UPON APPEAL—ARGUMENT.—Where appellant's counsel relies upon error in the instructions given, modified, and refused, he should point out definitely, in his argument, wherein the action of the court was erroneous; and the appellate

court cannot be asked to search through the record for errors which counsel may be suspected to be relying upon.

APPEAL from a judgment of the Superior Court of Santa Cruz County, and from an order denying a new trial.  Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Hugh R. Osborn, for Appellant.

James A. Hall, for Respondents.

KERRIGAN, J.—This is an action against a constable and his bondsmen to recover the value of certain personal property taken by said officer under and by virtue of a writ of attachment.  The verdict of the jury was for the defendants, and this is an appeal from the judgment entered thereon and from an order denying plaintiff's motion for a new trial.

The facts are as follows: During the latter part of November, 1906, E. R. Whitman was in Watsonville, attending for the plaintiff to the purchase and shipment of produce which had theretofore been contracted for by W. M. Elsom, the plaintiff.  This produce, on being loaded into cars engaged by plaintiff, left one of them only partially filled.  On November 26th Whitman, on his own account, obtained from one J. F. Kane, one hundred and thirty sacks of potatoes, and loaded them into the partially filled car, and billed the whole car to plaintiff.  The car left Watsonville, arriving at Santa Cruz the next day, at which time plaintiff claimed to be the owner of the potatoes through purchase from Whitman.  On November 28th Kane, having been refused payment by Whitman for the potatoes, commenced an action against him in the justice's court, and caused a writ of attachment to be issued therein, which was immediately levied by the constable, defendant in this case, upon the lot of potatoes in question.  Plaintiff duly claimed the potatoes as his property, but the constable ignored his claim, sold them, and now retains the proceeds of the sale.  The present action is against him and his bondsmen for conversion of the potatoes.

At the trial the defendants introduced evidence to show that there was an understanding between Kane and Whitman that

the title to the potatoes was not to pass to Whitman until they were paid for. Under these circumstances Kane was at liberty to treat the transaction as a sale absolute or conditional (*Van Allen* v. *Francis*, 123 Cal. 477, [56 Pac. 339]; *Vermont Marble Co.* v. *Brow*, 109 Cal. 236, [50 Am. St. Rep. 37, 41 Pac. 1031]); but, inasmuch as Kane brought an action against Whitman for goods sold and delivered, and caused the goods to be attached as the property of Whitman, Kane must be deemed to have elected to consider the sale as absolute and unconditional. (*Parke etc. Co.* v. *White River L. Co.*, 101 Cal. 37, 40, [35 Pac. 442]; *Ward Land and Stock Co.* v. *Maples*, 147 Cal. 747, [82 Pac. 426].)

At the request of the defendants the court, by an instruction, submitted to the jury the question whether or not, under section 3440 of the Civil Code, there was such a delivery and continued change of possession from Whitman to Elsom as to make the transfer between them valid as to Kane. Plaintiff contends (if we understand him correctly) that there was no evidence in the case to warrant the giving of this instruction.

We will state in some detail the facts touching this phase of the case, as shown by the testimony.

Kane testified that a firm of produce dealers, by name Jacobs & Malcolm, telephoned to him from San Francisco "that Whitman wanted one hundred and thirty sacks of potatoes, that he was willing to pay $1.50 a hundred for them, that they did not care to sell them to Whitman, and if I wanted the deal they would give them to me for $1.45. . . . Subsequently I sold Whitman one hundred and thirty sacks of potatoes from the Jacobs & Malcolm lot. November 26th or 27th, I said to Whitman, 'When are you going to ship them, and when are you going out of town?' He replied, 'I don't know.' . . . In reference to payment he said, 'I will be right down to the office. . . . I suppose I can get the potatoes if I pay for them?' I said, 'Under those conditions you can have them, but they must be paid for before they leave town.' When I next saw Whitman he gave me the weights, and said he would be right down to the bank to get me a draft for them." He further testified that shortly after that Whitman got possession of the potatoes, and shipped them without paying therefor, and upon demand refused to do so, saying in

substance that he had never intended to pay for them. This witness and also the constable testified—and in fact plaintiff admitted—that at the time the writ of attachment was levied Whitman was in full charge of the potatoes; that he had the key to the car containing them, and that he was there superintending their unloading. Elsom testified that the arrangement between him and Whitman was that the profits, if any, realized from the sales of other lots of produce purchased at Watsonville were to be divided equally between them, but no division of profits at all was to be made concerning the potatoes in controversy; that he purchased these potatoes about noon November 27th from Whitman; that while he did business with the banks in Santa Cruz, on this occasion he was at his home, and had on hand in cash five or six hundred dollars, or perhaps a thousand dollars, and having no checkbook there he paid Whitman $240.75 in cash for them; that all other purchases of produce at Watsonville were made by Whitman for him excepting these one hundred and thirty sacks, and that the persons who sold such produce knew that he was the purchaser, and they looked to him for payment. The witness also said that at the time of the purchase of this lot of potatoes Whitman no doubt owed him a balance on some money advanced to pay expenses; nevertheless nothing was said about this balance, nor was any attempt made to deduct it in making this payment. Whitman testified that he did not buy the potatoes from Kane, but from Jacobs & Malcolm, but he admits that Mr. Jacobs, of that firm, told him that if they sold him the potatoes he would have to pay for them before taking them out of the warehouse. Jacobs testified that, judging from past transactions, Whitman was a man not to be trusted.

Whitman obtained these potatoes on the afternoon of November 26th without paying therefor; and as a result of his efforts they went out of Watsonville that night on the 11 o'clock freight train. He himself went to Santa Cruz early the next morning, and the potatoes reached there that same afternoon. Thereafter on the same day, without any claimed change in the market price of the commodity, without any attempt to dispose of them to anyone else, and without any general examination of them by the purchaser, Whitman as-

serts that he sold the potatoes to the plaintiff Elsom for the same price that he himself agreed to pay for them.

Kane, who was absent from Watsonville during the day of November 27th, returned in the evening, and on learning that Whitman had taken the potatoes without paying for them, boarded a train that night and went to Santa Cruz. The next morning he saw Whitman about 7 o'clock, and demanded payment of him. Whitman refused to pay, and in effect, according to Kane's testimony, said that it had been his intention throughout the negotiations to evade payment for them— and we may add that his conduct in the matter is quite consistent with such declaration.

Both Whitman and the plaintiff testified that on the afternoon of November 27th (the day before the attachment) Whitman, with money received from plaintiff for that purpose, paid the freight on all the produce, and that later that afternoon the purported sale was effected. The constable and the freight agent, on the other hand, testified that on the morning when the attachment was served and levied the freight had not been paid. The jury probably believed these two disinterested witnesses, and concluded that if Whitman and Elsom were wrong in one part of this statement they were probably wrong as to the other, and that therefore the alleged sale did not take place until after the writ of attachment was served and levied.

No one can read this record and hesitate for one moment to say that the case is at least open to the view that the transfer from Whitman to the plaintiff was made with the intention of defeating Kane's demand, and that it was fraudulent. But with respect more particularly to plaintiff's contention, we also think there was sufficient evidence in the case to warrant the giving of the instruction to which objection is made. When the potatoes left Watsonville they were under the control of Whitman, and from that time until the levy of the attachment they were subject to his disposition, being in his actual possession during part of the time. It was for the jury to say whether, as between Whitman and Elsom, there was sufficient delivery and change of possession to make the transfer valid as against Whitman's creditor Kane.

Plaintiff also contends that the court committed error in refusing to permit him on rebuttal to go into the matter of

the sale from Jacobs & Malcolm to Kane. Testimony upon this subject was introduced by him in his case in chief, and the court did not abuse its discretion in permitting no further examination upon the subject. There is no merit in plaintiff's suggestion that the evidence does not show a sale of these potatoes from Jacobs & Malcolm to Kane.

At the request of the defendants the court gave the jury seven instructions. The plaintiff proposed six instructions, some of which were given in a modified form, and the others were refused. The plaintiff, in his specifications of errors of law, says that the court erred in giving each of the seven instructions proposed by defendants; that it also erred in modifying certain of his proposed instructions and in refusing others; and in his brief he refers to the instructions twice as follows: "And the court gave all of the instructions requested by defendants, each of which, when applied to the facts of this case, is erroneous." "It was also error for the court to refuse to give the instructions requested by plaintiff. The issue of ownership and possession was one of fact for the jury to decide."

If counsel believes that the court committed error in reference to the instructions, he should point out definitely wherein the action of the court in this regard was erroneous. Such requirement is essential, not only out of fairness to opposing counsel, but also for the proper expedition of the business of this court. We should not be asked to search through the record for errors which we may suspect counsel to be relying upon.

Under somewhat similar circumstances it was said, in *Arnold* v. *Producers Fruit Co.,* 141 Cal. 738, [75 Pac. 326], "The court will not examine the offered instructions, and go through the record to see whether or not any one of them was necessary to guide the jury in its verdict."

In *Dale* v. *Purvis,* 78 Cal. 113, [20 Pac. 296], the court commended brevity, but thought it was overdone in that case, and held that appellant must put his finger on the instruction complained of, and not assail the instructions as a whole.

In the present case, the allegations of the complaint as to the damages suffered by plaintiff brought the amount of his claim up to over $300, but the value of the potatoes was only $240.75. The record is needlessly long, consisting of one

hundred and forty-one pages of closely printed matter. This being the condition of the record, and remembering the nature of the transaction involved, we feel no inclination, and perceive no reason for departing from the rule just stated.

The judgment and order are affirmed.

Cooper, P. J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 28, 1909.