[Civ. No. 14729.   First Dist., Div. Two.   Mar. 20, 1952.]

DELTA DANIELSON, Appellant, v. THEODORE J.
ROCHE et al., Respondents.

Joseph E. Isaacs, Alan H. Critcher and Martin J. Jarvis
for Appellant.

Joseph A. Brown for Respondents.

GOODELL, J.—This appeal is from a judgment in favor of defendant A. W. Morton for costs. A new trial was denied.

On December 31, 1947 appellant filed this action against Dr. A. W. Morton, Sts. John Hospital, and four fictitious defendants, for damages arising out of an abdominal operation performed on appellant by Dr. Morton in said hospital on February 26, 1935. A nonsuit was granted as to the hospital and no further action was taken thereon.

After this appeal was taken Dr. Morton died and his executors were substituted in his place.

On or about February 25, 1935 appellant, then living in a hotel in San Francisco, was in severe abdominal pain and Dr. Morton was summoned. He called, accompanied by a nurse, examined the patient, diagnosed her case as appendicitis and salpingitis, and advised an immediate operation. She was taken to the hospital and before the operation she signed the following writing: "I, the undersigned, having engaged Dr. Morton, physician and surgeon, do hereby grant him the authority and give my consent for him to administer and perform all and singular any treatments or operation to or upon me which may now or during the contemplated services be deemed advisable or necessary." Appellant testified that this writing was brought to her room by a nurse before the operation, that she had read it, and that the signature thereon was hers.

While operating, and while appellant was under a spinal anesthetic, Dr. Morton found that her Fallopian tubes were full of pus, which was a condition more serious than the inflammation which he had diagnosed. He therefore removed not only the appendix, but the diseased part of both tubes. It is that part of the operation involving the tubes which forms the basis of this action as appears from the following allegation: "That no medical necessity, justification or excuse existed for cutting and tying said fallopian tubes of plaintiff; that no medical or surgical emergency was involved therein; that plaintiff was then and there of full age and of sound mind, fully capable of consenting to any operation that might be necessary; that her consent was not obtained by said defendant, A. W. Morton . . . to the said operation insofar as the same involved the fallopian tubes of plaintiff."

Appellant's counsel say: "this action is not based upon any lack of skill on the part of the defendant physician. It

is not based upon any theory of wrong diagnosis. It is an action for assault and battery.''

Dr. Morton testified as follows with respect to the necessity for the operation on the tubes:

''Q. Dr. Morton, in your opinion, was it necessary to remove the portions of the fallopian tubes which you did remove, to save this patient's life? A. It was.

''Q. And for what reason did you believe her life to be in danger at that time? A. I did, because there was free pus there, and when you have got free pus in the abdomen with inflammation, it is liable to extend up above, and it is good judgment to take it out.

''Q. What will happen if it extends up above? A. Well, you get a general peritoneal inflammation of the cavity that they have described there, and that is called inflammation of the bowels, or general peritonitis, and when that does occur, it often produces fatality.''

He elaborated by explaining the difference between an ordinary salpingitis (his initial diagnosis) where there is a drainage of pus, and a pyolsalpinx, which results from a failure or lack of drainage. He said: ''But whenever it becomes blocked and fills up, you get a pyolsalpinx. Then you have got a very serious condition, and that is what happened in this case.'' The hospital's anesthesia record in evidence shows that his preoperative diagnosis was ''appendicitis-salpingitis.'' This was arrived at from the examination at the hotel and from the history which the patient then gave. Dr. Morton testified that after the operation he wrote thereon the word ''pyolsalpinx'' under the word ''salpingitis.'' Thus the condition actually discovered in the operation appears on the hospital record in juxtaposition to the condition as he first diagnosed it.

Dr. Carlos Fernandez, who assisted at the operation, testified:

''Q. Did you see the pus there? A. Yes, there was big pus, there was a mass of pus.

''Q. And did you see the tubes after they were taken out? A. Yes.

''Q. And what did you observe about them? A. That it was a mass involving other tissues, due to the inflammatory condition, so that it makes a mass altogether like inflammation of an abscess and pus is inside and around . . .

''Q. Now, was it necessary, to protect and preserve the life of the patient, to perform that operation? A. Yes . . .

"Q. And in your opinion, was there any way to cure that condition without removing the tubes? A. No. . . .

"Q. And you believe that was the only thing that could be done to preserve her life and health? A. Yes, sir."

■ When "the matter in issue is one within the knowledge of experts only and is not within the common knowledge of laymen, the expert evidence is conclusive" (*Engelking* v. *Carlson*, 13 Cal.2d 216, 221 [88 P.2d 695]).

■ No evidence, either expert or otherwise, was produced by appellant to contradict the foregoing testimony of the two surgeons. More than that, it may be said here as it was in *Preston* v. *Hubbell*, 87 Cal.App.2d 53, 59 [196 P.2d 113], (a case containing a comprehensive discourse on the law of emergency operations): "Plaintiff offered no evidence that an immediate operation was not required." It follows that the allegation that no medical or surgical emergency existed for the operation on the tubes was not only not proved, but was definitely disproved by uncontradicted evidence.

■ There was likewise a failure of proof of plaintiff's allegation "that her consent was not obtained by said defendant, A. W. Morton . . . to the said operation insofar as the same involved the fallopian tubes. . . ." Such consent, or lack thereof, was thus tendered as one of the issues—and an important one—for the jury. The writing gave consent to "administer and perform all and singular *any* treatments or *operation* . . . which may now *or during the contemplated services* be deemed advisable or necessary." (Italics added.) The jury apparently treated the consent as embracing not only the appendectomy but whatever further operation might be considered necessary after the abdomen had been opened up and explored by the surgeon. The language of the consent (italicized above) meant just such a situation as that which developed in this case. The verdict implies a finding that the consent included the operation in both its phases.

Dr. Morton testified that before the operation he told appellant that he was going to take out both the appendix and the tubes and that after the operation he told her that it had been necessary to operate on the Fallopian tubes, and he had done so, and that the consequence of such an operation was that thereafter she would be unable to become a mother, also that there was known to medical science an operation (which he described to her) which could be performed later, if she so desired, which would remove such disability and render conception again possible. Appellant testified that neither

before nor after the operation did Dr. Morton tell her anything whatever about the fallopian tube operation or its consequences, and that she learned of it only on February 27, 1947, when another surgeon operated for adhesions. This testimony produced a sharp conflict which the verdict resolved against appellant. With respect to such matters appellant in her brief states that she "is fully cognizant of the rule that an appellate court in California will not review the evidence for the purpose of upsetting the verdict of the jury and that this court is bound by the decision of the jury as to the facts." This removes the necessity for further discussion of this phase of the case.

The plaintiff requested four instructions, all of which were given.

The first simply said that an operation performed without consent is an assault and battery.

The second was very general, and stated only self-evident propositions.

The third was as follows: "I instruct you that a surgeon will only be justified in performing an operation without the consent of the patient where the following circumstances exist: that the patient is in such (a dire state or such) dire straits that his consent cannot be obtained and where delay in performing the operation will necessarily result in placing the life of the patient in hazard . . . [I]f you should find that the defendant cut and tied the fallopian tubes of the plaintiff without her consent, that the wrong committed is not negligence, it would be trespass. Every human being of adult years and sound mind has a right to determine what shall be done with his own body, and a physician who performs an operation without his patient's consent commits (as a matter of law) an assault for which he is liable in damages."

The fourth instruction told the jury simply that when any bodily function is destroyed by a wrongful act, compensation in damages follows.

The court gave instructions in addition to the four presented by plaintiff. It is claimed that the following four conflict with those tendered by plaintiff:

"You are instructed that if in the course of an operation to which the patient has consented, the physician should discover conditions that could not with reasonable professional skill be anticipated before the operation was commenced, and which condition or conditions, if postponed, would involve pain and distress to the patient out of proportion to the risk

of the new operation, and if the condition found was such that a reasonable man would consent to the operation, if he knew of the condition discovered by the doctor, then the doctor . . . would, though no express consent had been obtained or given, be justified in extending the operation to remove the discovered condition and overcome it.''

''When a patient places . . . herself in the care of a surgeon without instructions to the surgeon or limitations upon his authority, and surgery is indicated, she thereby, in law, consents . . . that the surgeon may perform such operation or surgery as in his best judgment, care and skill is necessary, proper and essential to the patient's welfare, and in case the surgeon (in the exercise of his best judgment) performs an operation upon the plaintiff, and there is no complaint against the surgeon for want of the exercise of care and skill, of course, there could be no recovery against the surgeon.''

''You are instructed that the law recognizes that a surgical operation cannot be contracted for or performed according to plans and specifications, and that during the course of the operation, when the patient is unconscious, and his consent cannot be obtained, the surgeon may find a condition, previously unknown to exist, which condition may be a hazard to the life and to the health of the patient, and which requires the surgeon to act immediately for the best interests of the patient as to the extent of the operation. In such a case, the patient is presumed to have contemplated all of the risks incident to the operation and to have given an implied consent to the exercise of his best skill and judgment by the surgeon.''

''You are instructed that a surgeon may lawfully perform, and it is his duty to perform, such operation as good surgery demands, in cases of emergency, without the consent of the patient, where such operation is within the usual and customary practice among physicians and surgeons in the same locality, and where some immediate action is found necessary for the preservation of the life and health of the patient, and it is impracticable to first obtain consent to the operation or treatment which the surgeon deems to be immediately necessary.''

Appellant's counsel say: ''The court instructed the jury . . . that a surgeon may not, except in a case of dire emergency . . . perform any operation, and then in the next breath proceeded to give instructions contrary thereto'' but they do not point out any part of one which conflicts with any

part of another. ■ As said in *Elsom* v. *Moore,* 11 Cal. App. 377, 382 [105 P. 271], "If counsel believes that the court committed error in reference to the instructions, he should point out definitely wherein the action of the court in this regard was erroneous. . . . We should not be asked to search through the record for errors which we may suspect counsel to be relying on." See, also, 2 California Jurisprudence, page 731. However this may be, a comparison of plaintiff's third instruction with the four last quoted does not show any conflict. The consent did not specify either an appendectomy or a salpingectomy, or any other operation by name. It did, however, embrace "any . . . operation . . . which may now *or during the contemplated services* be deemed advisable or necessary" (italics added). Appellant in her complaint tendered a distinct issue on whether the consent was broad enough to cover the operation on the tubes, and we fail to see how the jury could have been confused or misled by the four instructions which appellant, in the most general fashion, now criticizes.

The one-year statute of limitations was pleaded. The operation was performed on February 26, 1935, and this action was not commenced until December 31, 1947. The complaint alleges that plaintiff only on February 27, 1947 learned that the tubes had been operated on, a matter on which there was a decided conflict between appellant's testimony and Dr. Morton's. ■ Appellant cannot complain of the instructions given on this subject since they were based on her theory that the statute commences to run only from discovery. Whether that rule applies in such a case as this (which is disputed by respondents), need not be decided.

After Dr. Morton's death respondents moved to dismiss this appeal on the ground that the cause of action, if any, did not survive his death. It is not necessary to decide this question in view of the conclusion reached on the merits of the case.

The judgment appealed from is affirmed and the motion to dismiss the appeal is denied.

Nourse, P. J., and Dooling, J., concurred.