[Civ. No. 637.   Fifth Dist.   June 22, 1966.]

WALLACE T. HYDE, Plaintiff and Appellant, v. AVALON AIR TRANSPORT, INC., et al., Defendants and Respondents.

Frank K. Richardson for Plaintiff and Appellant.

Dryden, Harrington, Horgan & Swartz and A. M. Mull, Jr., for Defendants and Respondents.

STONE, J.—Plaintiff appeals from a judgment entered pursuant to a defense verdict in an action for damages for injuries received when he was struck by an amphibious aircraft while spearfishing. The plane was piloted by defendant Fred Pierce and owned by defendant Avalon Air Transport, Inc., a California Corporation. Since there is no question that Pierce was acting within the course and scope of his employment at the time of the accident, for convenience we shall use the singular in referring to the defendants.

Avalon Air Transport operates an air taxi service between Long Beach and the City of Avalon on Santa Catalina Island. Pierce, employed by Avalon Air Transport since 1959, had made approximately 20,000 round trips between Long Beach and the island before the accident occurred. He usually landed near the City of Avalon but if weather and water conditions made landing there dangerous, he would use an alternate pattern and land in kelp beds near Ring Rock, southeast of the City of Avalon. This is what he did August 12, 1962, the day the accident occurred.

Ring Rock, approximately 15 feet in diameter, rises from the water about 25 feet offshore. Plaintiff and four companions entered the water some 20 minutes before the accident occurred. All five were equipped with faceplates, snorkels and flippers, but only plaintiff carried a spear gun. He swam to a kelp bed just beyond Ring Rock and between 70 and 75 feet from shore; his nearest companion was approximately 25 feet inshore. As plaintiff was lying motionless, face down in the

water, observing fish in and under the kelp bed, he neither heard nor saw the aircraft before the undersurface of the seaplane struck his head and left shoulder.

Pierce testified that he frequently used the alternate landing area near Ring Rock, and that it was the normal landing area of a competitor, Catalina Channel Airlines. His aircraft cruised at a speed of approximately 170 miles per hour and touched down at a speed of approximately 70 miles per hour. Pierce also said he had never seen anyone swimming in the area of the kelp beds, that with good visibility a swimmer in motion could be seen for a distance of a quarter mile but it would be difficult to see a motionless swimmer for more than 100 to 150 feet. Pierce testified that he kept the water under observation during the landing operation but saw nothing until the plane was settling in the water, when Mrs. Mills, a passenger occupying the co-pilot's seat, shouted, ''I think there is a man in the water ahead.'' Pierce then saw a rubber snorkel tube extending above the surface of the water about 50 feet ahead and slightly to the left of the nose of the aircraft, but he never saw plaintiff. He testified the warning came too late to avoid the accident as it was only two to five seconds after Mrs. Mills shouted that the plane reached the area where the snorkel tube was.

Mrs. Mills testified that just as the seaplane was about to land on the water she saw a snorkel tube rising out of the kelp bed and exclaimed, ''There is somebody there.'' She then saw plaintiff lying face down and motionless in the kelp bed about 15 to 20 feet from the nose of the aircraft. Because of plaintiff's suntanned skin and brown and yellow printed shorts, it was difficult to see him against the background of rustic tan or brown kelp.

Mrs. Mills also said she was familiar with the area and had seen seaplanes land in the kelp beds many times. This was corroborated by a former pilot for Catalina Channel Airlines, and by a lifetime resident of Santa Catalina Island.

Plaintiff testified that he had a general knowledge of the area, having worked on the island for two summers and having spent some time there every summer since 1945. He denied ever seeing a seaplane land in the vicinity of Ring Rock prior to the accident, although he admitted seeing planes land there afterward.

We go directly to plaintiff's assignments of error concerning the instructions, as we find no merit in the other points raised.

First, plaintiff argues that the court erred by instructing the jury on the doctrine of assumption of risk. The essential elements of the doctrine have been articulated in a number of rather recent Supreme Court cases. Perhaps the most comprehensive discussion appears in *Vierra* v. *Fifth Avenue Rental Service*, 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777], wherein the necessary elements of the doctrine of assumption of risk are delineated, and distinguished from contributory negligence. ■ In *Vierra* we are told that before the doctrine of assumption of risk is applicable, "the victim must have not only general knowledge of a danger, but must have knowledge of the particular danger, that is, knowledge of the magnitude of the risk involved.

". . . such requirement is independent of the requirement of actual general knowledge of a danger. In other words, actual knowledge of a danger is not interchangeable with appreciation of the risk." (Pp. 271-272.) (See also *Shahinian* v. *McCormick*, 59 Cal.2d 554, 567 [30 Cal.Rptr. 521, 381 P.2d 377].)

Keeping in mind the foregoing language of *Vierra*, we turn to the facts of this case.

Insofar as the record before us reflects, neither the City of Avalon nor the County of Los Angeles designated seaplane landing areas in the vicinity of Santa Catalina Island. Witnesses described generally the two landing areas customarily used, but no one testified there were boundary or landing area markers to warn swimmers or boaters or, for that matter, to guide pilots of seaplanes.

■ Defendant argues that although plaintiff denied he knew seaplanes were landed in the area where the accident occurred, nevertheless the jury could have inferred from plaintiff's having summered in the area for several years that he must have known seaplanes were likely to land where this one did. The inference presents a question of fact on the issue of contributory negligence; it does not justify the additional or further inference that plaintiff had actual knowledge of the particular danger. To use the language of *Vierra*, "actual knowledge of a danger is not interchangeable with appreciation of the risk."

We conclude that the record does not reflect evidence warranting instructions on assumption of risk.

■ We turn to instructions concerning defendant's affirmative defense of contributory negligence. The court instructed the jury as follows: "Ordinance 303 of the City of

Avalon, Los Angeles County, California, in part reads as follows:

" 'Section 2: It shall be unlawful and shall constitute a misdemeanor for any person to spear fish in the waters of the Pacific Ocean within the corporate limits of the City of Avalon.'

"Now, if a party to this action violated . . . Ordinance 303 of the City of Avalon that I have just read to you, a presumption arises that he was negligent. This presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable or justifiable."

Plaintiff asserts it was error to instruct that a presumption of negligence arose from plaintiff's violation of Ordinance 303 since the ordinance was not intended to protect spear fishermen from having seaplanes set down on them. When Ordinance 303 is read in its entirety, the validity of plaintiff's argument becomes apparent. Section 1 of the ordinance, omitted by the court, provides: "It shall be unlawful and shall constitute a misdemeanor for any person to carry on the streets or other public property of said City any fishing spear or any instrument which shall be sharpened or be dangerous, exceeding two feet in length."

Obviously the ordinance was not designed to keep people out of the water at the place where the accident occurred, but to protect people within the city limits of the City of Avalon from being injured by fishing spears. The ordinance did not prohibit swimmers, scubadivers, or other persons from being in the area; in short, it was not designed to protect people from seaplanes but to protect them from spears and spear guns.

The Supreme Court commented upon the question of negligence arising from violation of a statute, in *Routh* v. *Quinn*, 20 Cal.2d 488, at page 492 [127 P.2d 1, 149 A.L.R. 215], as follows: ". . . a violation of a statute is actionable negligence only as to those persons for whose benefit or protection it was enacted. (*King* v. *San Diego Electric Ry. Co.*, 176 Cal. 266 [168 P. 131]; 19 Cal.Jur. 635; Restatement, Torts, §§ 286, 288.)" (See also *Richards* v. *Stanley*, 43 Cal.2d 60, 62 [271 P.2d 23]; 35 Cal.Jur.2d §§ 18, 19, pp. 504-507.)

■ It is fundamental, of course, that to constitute actionable negligence a violation of a statute must be a proximate cause of an injury. ■ Here, plaintiff's violation of the spearfishing ordinance had no causal connection with the accident. To argue that had plaintiff not been spearfishing he would not have been at the scene of the accident is no more than to argue that had plaintiff stayed home that day he

would not have been injured. (*Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 497 [225 P.2d 497] ; *Hagen* v. *Laursen*, 121 Cal. App.2d 379, 385 [263 P.2d 489].)

The trial judge gave instructions covering matters required by Code of Civil Procedure section 2061, together with requested instructions covering issues raised by the pleadings and the evidence. Plaintiff assigns as error the court's failure to give additional instructions, *sua sponte*, on the subjects of res ipsa loquitur and last clear chance. Apparently these theories were born of afterthoughts, as plaintiff requested no instructions pertaining to them. ■ Plaintiff cites the general rule stated in a number of cases, typified by *Phillips* v. *G. L. Truman Excavation Co.*, 55 Cal.2d 801, 806 [13 Cal. Rptr. 401, 362 P.2d 33], that a litigant is entitled to have the jury instructed on all theories of the case which find support in the pleadings and the evidence. No one questions this fundamental right. It is, however, just that, a right—a right the litigant has the privilege of exercising in a civil action. It was not the duty of the trial judge to sift the evidence and research the law in order to determine every possible theory the pleadings and the evidence of each party might suggest, and to compose instructions to cover them. That duty rests on the attorneys in civil cases. ■ In *Korakakis* v. *Freeman*, 178 Cal.App.2d 331, it was held, at page 335 [2 Cal.Rptr. 802] : "A party may not complain of the trial court's refusal to give an instruction unless he requests it specifically and it is not objectionable upon any grounds." (See *Carbaugh* v. *White Bus Line*, 51 Cal.App. 1, 5-6 [195 P. 1066] ; *Blair* v. *Guarantee Title Co., Inc.*, 103 Cal.App. 260, 272 [284 P. 719].) The foregoing rule is implicit in Code of Civil Procedure section 607a, which requires "counsel for the respective parties, before the first witness is sworn, to deliver to the judge presiding at the trial, and serve upon opposing counsel, all proposed instructions to the jury covering the law as disclosed by the pleadings."

The section also provides that counsel, before the commencement of argument, may deliver additional proposed instructions to the jury upon questions of law developed by the evidence and not disclosed by the pleadings.

The judgment is reversed.

Conley, P. J., and McMurray, J. pro tem.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 17, 1966.

---

*Assigned by the Chairman of the Judicial Council.