[Civ. No. 35801. Second Dist., Div. Two. Feb. 1, 1971.]

ELENA STARR, Plaintiff and Respondent, v.
CARL J. MOOSLIN, Defendant and Appellant.

**COUNSEL**

Ives, Kirwan & Dibble and Carl J. Mooslin for Defendant and Appellant.

Joseph J. Brandlin and William T. Brandlin for Plaintiff and Respondent.

## Opinion

**HERNDON, Acting P. J.—**

### Statement of the Case

Defendant and appellant Carl J. Mooslin, an attorney at law, appeals from the judgment awarding plaintiff damages in this action for legal malpractice. Plaintiff Elena Starr charged that as the result of defendant's negligence in representing her in a transaction involving a sale of real property, she suffered damages in the sum of $50,000. The judgment against defendant in the amount of $42,000 was entered upon the verdict of a jury. Defendant also appeals from the order denying his motion for judgment notwithstanding the verdict.

### Statement of the Facts

Plaintiff, a woman in her eighties, was the owner of real property located at 355 South Alvarado Street, Los Angeles. Defendant, a practicing attorney and engaged in the general practice of law, had handled various legal matters for plaintiff over a period of approximately 10 years.

Some time in the year 1965 plaintiff decided that she would offer her property for sale. Thereafter she received offers from Lucius Foster and William Cooper. Plaintiff discussed some of these offers with the defendant. On January 4, 1966, plaintiff and defendant met with Foster and Cooper at defendant's law office. At this meeting the parties negotiated further with respect to the purchase and sale of the property but no agreement was reached. Foster stated that he would not be participating in the transaction as a principal but that a Mr. Robert Fisher, "an experienced builder and developer" whom he represented, would offer $60,000 for the property, $10,000 to be paid in cash at the close of escrow with the balance to be evidenced by a $50,000 promissory note secured by a deed of trust. The offer further provided that the purchase money deed of trust would be subordinated at a later date to a $275,000 construction loan. The money for construction purposes would be borrowed in installments, the first to be in the amount of $30,000. Foster further stated that Fisher would be willing to provide additional security by way of a deed of trust on other real property owned by him.

On the following day, January 5, 1966, Mrs. Starr decided that she would accept the offer as presented by Foster on behalf of Fisher. After calling Foster and informing him of her decision, she called defendant and requested that he appear at the City National Bank in Beverly Hills

at the time appointed to represent her in the opening of the escrow for the purpose of effectuating the sale.

In response to plaintiff's request, defendant went to the City National Bank and, after verifying the terms of the sale with the parties present, proceeded to dictate the escrow instructions to an employee of the bank using a printed form.

The escrow instructions thus prepared provided for a total purchase price of $63,000 of which $10,000 was to be paid in cash and the balance to be evidenced by a $50,000 promissory note payable to plaintiff secured by a purchase money deed of trust. Further provision was made for the delivery to Foster of a note in the amount of $3,000 to cover his broker's commission. Fisher and Cooper and/or their nominee were named as purchasers. By a subsequent amendment to these instructions the purchase price was reduced to $60,000 and the provision for the promissory note in payment of Foster's commission was eliminated.

The instructions further provided that the buyer would execute and place in escrow a deed of trust as additional security in favor of the seller on real property located at Roseland and LaBrea, Los Angeles, California, the legal description of said property to be furnished at a later date. Beneath the foregoing provisions the following language as dictated by defendant was typewritten into the instructions:

"The following is stated as a matter of record only with which the escrow holder is not to be concerned: (1) Seller agrees to subordinate on demand, to a 1st trust deed, not to exceed $275,000.00, bearing interest at not more than 7.5% per annum, for not more than 30 years. Seller agrees to subordinate forthwith to $30,000.00, the same being a portion of the above referred to $275,000.00 loan, and will execute upon demand any additional subordination agreement in order to enable Buyer to refinance or to increase the encumbrance to be placed upon the land provided the same shall not exceed in total $275,000.00 represented by a single 1st trust deed."

The escrow instructions thus prepared by defendant were signed by plaintiff as seller and by Fisher and Cooper as buyers and were deposited with City National Bank as escrow agent. By an amendment to the instructions Fisher alone was designated as the buyer and plaintiff's deed to Fisher as grantee was thereafter deposited in escrow.

Within a few days thereafter Fisher made arrangements to borrow $30,000 from Irving and Matilda Scham and Ben and Eva Solomon. This loan was to be evidenced by a promissory note secured by a first deed of trust on the property which plaintiff had agreed to sell to Fisher.

On January 18, 1966, Fisher and the parties from whom he was borrowing the $30,000 opened an escrow at LaCienega Escrow Company for the purpose of effectuating that loan. Fisher deposited therein his promissory note and the lenders deposited the $30,000.

On the following day, January 19, 1966, Fisher deposited in the original escrow at City National Bank his promissory note in the amount of $50,000 payable to plaintiff and the two deeds of trust on the subject property, one of which was security for the $30,000 loan and the other was to secure plaintiff's $50,000 note. Plaintiff's deed of trust contained on its face the following provision: "This deed of trust is second and subject to a first deed of trust to record concurrently."

On January 24, 1966, the LaCienega Escrow Company paid out $10,150 to the City National Bank for plaintiff's account, $18,265 to Robert Fisher, $300 to Lucius Foster, and $1,285 to other persons not involved in this case.

According to the testimony of the employee of City National Bank who handled the escrow for that institution, the instruments deposited therein were recorded pursuant to the oral direction of defendant and the escrow was thereupon closed. As a result of these procedures plaintiff's $50,000 purchase money deed of trust and the $30,000 deed of trust held by the Schams and Solomons were recorded concurrently. Plaintiff's deed of trust was thereby subordinated.

Subsequently, Fisher failed to make the payments on the Scham-Solomon note. Fisher's default resulted in foreclosure proceedings instituted by the Schams and the Solomons. At the trustee's sale the property was purchased by the beneficiaries. Plaintiff was unable to bid at the sale because of her lack of sufficient funds. The purchasers at the foreclosure sale thereafter brought an unlawful detainer action against Mrs. Starr to obtain possession. Mrs. Starr filed an answer and cross-complaint naming as cross-defendants Fisher, Cooper, Foster, the Schams, the Solomons, and others, and charging said cross-defendants with fraud and conspiracy to deprive her of her property. This litigation was terminated by a settlement whereby Mrs. Starr repurchased her property for $32,500.

Immediately thereafter plaintiff resold the property for $57,500 of which $32,500 was paid to the buyers at the foreclosure sale. Plaintiff received $1,500 in cash and a promissory note in the amount of $14,035 secured by a deed of trust on the subject property. Approximately $800 was expended in escrow expenses and $8,167 was paid over to Mr. J. J. Brandlin as compensation for his legal services.

Thereafter the instant action against defendant was filed by Mrs. Starr.

Her complaint alleges that defendant, as an attorney, undertook to represent her and to act as her attorney in consummating the sale of her property. It is further alleged in substance that defendant negligently performed his duties in that he failed to use that degree of learning, skill and judgment ordinarily used by lawyers of good standing and practicing in the same locality under similar circumstances and as a proximate result of such negligence plaintiff was damaged in the sum of $50,000.

At the trial oral and documentary evidence was introduced proving the facts as above recited. It is to be observed that except for the opinions of the expert witnesses hereinafter summarized, the evidence was virtually uncontradicted. On cross-examination by counsel for plaintiff, defendant testified that he was acquainted with subordination agreements and recognized that such agreements ordinarily provided that the proceeds from secured loans would be used to improve the real property. Defendant did not research the applicable law prior to preparing the escrow instructions in this case. At the time of this transaction it was defendant's understanding that it was probably the law that if plaintiff and the buyer entered into a subordination agreement which provided that the buyer was to use the $30,000 to improve the property and if the lenders of the $30,000 had notice thereof and plaintiff did not waive her rights under the subordination agreement and if the $30,000 was not so used, the subordination would not be effective and plaintiff's trust deed would retain its priority. Notwithstanding his uncertainty on the subject, however, defendant did not research the law and the escrow instructions as prepared by him did not contain such provisions.

### Plaintiff's Expert Witness

Plaintiff called Dennis G. Harkavy, an attorney at law, as an expert witness. The qualifications of this witness as indicated by his testimony are unquestioned. Over defendant's objection, made solely on the ground that expert testimony is inadmissible to prove negligence in a legal malpractice suit, the witness was permitted to state his opinion in response to a hypothetical question whether or not, on the basis of the facts assumed, defendant had exercised that degree of learning, care and skill ordinarily possessed by attorneys in good standing practicing in the Los Angeles area at about this time and under similar circumstances. The witness answered: "In my opinion the requisite skill of a general practitioner was not employed in drawing these instructions." The witness thereafter stated at length the reasons for his opinion and pointed out in detail the several respects in which he considered the escrow instructions deficient.

## Defendant's Expert Witnesses

Near the end of the trial on a Friday afternoon, counsel for defendant called as his last witness an escrow officer employed by a local title company. This witness was asked to examine the escrow instructions and then to state his opinion as to whether or not under those instructions an escrow officer could properly record a $30,000 deed of trust ahead of the $50,000 deed of trust referred to therein. The trial court sustained plaintiff's objection to this question on the ground that qualifications of the witness to testify as an expert on the subject had not been sufficiently indicated. Defendant does not question the correctness of this ruling. Defense counsel then asked that the trial be continued to the following Monday to enable him to secure a qualified witness. The understanding upon which defendant's request was granted is indicated by the following colloquy between court and counsel:

"THE COURT: The record will show the absence of the members of the jury and the presence of counsel. I think the record should also show that before I dismissed the jury for the day, counsel favored me with a conference at the side bench from which I got the impression that the defense case so far as proof is concerned is ready to rest with one exception; that the defense proposes to offer, given time, to produce a witness, evidence by some qualified witness that the custom and usage among reputable escrow holders in Los Angeles County in early 1966 was such that the defendant might reasonably have relied upon such escrow holder, presumably the escrow holder referred to at the City National Bank, to prevent the recordation of the $30,000 encumbrance in such a manner that it would take priority over the $50,000 purchase price trust deed. Is that the request you made? MR. KIRWAN: Correct, your Honor. THE COURT: Now, will your proof embrace anything else? MR. KIRWAN: Well, I think it would have to follow with the questions from my client as to whether he knew that custom from his experience in handling escrows and he relied on that, but that is the gist of it. THE COURT: All right. On the representation by Mr. Kirwan that he desires to make such proof and because of the hour and my disposition not to have argument commence today, I did continue the matter until Monday at 9:30, solely for the receipt of that evidence, and I did promise Mr. Brandlin that we would clearly delineate the area to be covered since Mr. Brandlin has indicated he had no rebuttal to the case thus far presented. Did I understand you correctly? MR. BRANDLIN: Yes, your Honor. THE COURT: Now, then, Mr. Brandlin, you have the area in mind. Mr. Kirwan may or may not have such proof, but you are forewarned."

On the following Monday defense counsel called two expert witnesses,

attorney David Sefman and the Honorable Alfred Gitelson, a judge of the superior court. The rulings of the trial court permitted each of these witnesses to testify to his extensive experience in relation to the handling of escrows in similar transactions. Each of these witnesses was permitted over plaintiff's objections to testify to his opinion that in conformity with prevailing custom and practice among escrow agencies, a reasonably careful escrow holder would not have recorded the deeds of trust as was done in the instant case but would have required something more in the way of authorization than was required by the City National Bank in this case.

Each of defendant's expert witnesses was permitted to testify to his opinion that an attorney engaged in the general practice of law in the community exercising reasonable care could properly rely upon the custom and usage prevailing among escrow holders concerning which the witnesses previously had testified. Judge Gitelson testified as follows: "Q. Now, in respect to the custom with which you are familiar, do you have an opinion as to whether in the custom that prevailed at that time the escrow holder would have, in following that custom, recorded any documents relating to a $30,000 that is mentioned in that language? A. I do. Q. What is that opinion? [Objection interposed. Question rephrased.] Q. In the escrow instructions which I read to you, that portion from them, would they in the custom and usage that then prevailed, would an escrow officer record any documents relating to the $30,000 as mentioned in there that would give that $30,000 any priority in respect to the monies referred to in the escrow instructions? A. He would not."

The witness thereafter testified at some length in giving his reasons for that opinion. The essence of his testimony was that in recording the deeds of trust, the City National Bank had transgressed against the established custom and practice of escrow holders upon which defendant had reasonably relied. On the basis of the testimony of the two experts called by him, defense counsel argued in the trial court that the conceded deficiencies in the escrow instructions were not the proximate cause of plaintiff's damages.

### The Trial Court Did Not Err In Admitting The Testimony Of Plaintiff's Expert.

The sole authority upon which defense counsel has relied in support of his objection to the testimony of plaintiff's expert is *Gambert* v. *Hart,* 44 Cal. 542, decided in 1872. In that case the defendant attorney was charged with negligence in submitting a motion for a new trial after the entry of a judgment adverse to his client in the antecedent action without providing a properly certified statement as required by then prevailing practice.

The trial court in the ensuing malpractice action decided in favor of the defendant attorney holding that his mistake had caused plaintiff no harm because the motion for a new trial would necessarily have been denied in any event.

In affirming the judgment in the malpractice action, the Supreme Court agreed with the trial court's basic holding but in the course of the opinion rejected the contention that there was reversible error in a ruling which excluded appellant's offer of expert testimony to prove the negligence of the defendant attorney.

In that connection the court stated: "At the trial the plaintiff called the witness, Benham, to prove that these acts amounted to negligence in the defendant, as an attorney. But the Court excluded the evidence, and this ruling is assigned as error. The witness was not called to prove any *fact* in the case, and his evidence, if admitted, would have been only an expression of his opinion as an attorney, that the alleged acts or omissions of the defendant amounted to negligence in law. This was a question for the Court and not for the witness to decide. The facts being admitted or proved, it was a question of law for the Court whether they establish negligence in the defendant. The evidence was properly excluded." (*Gambert* v. *Hart, supra,* 44 Cal. at p. 549.)

Thereafter in due course the Supreme Court granted appellant's petition for a rehearing and at the same term of court filed an opinion holding *as a matter of law* that the attorney had been negligent in the particulars alleged by the plaintiff, *reversed* the judgment, and remanded the cause for a new trial. It is to be observed that the second opinion makes no reference to the issue as to the admissibility of the expert testimony.

Quite apart from the apparent fact that the language of the original opinion relied upon by appellant herein partakes of the nature of dicta, particularly in the light of the rehearing and the ultimate decision, it is clear that said language does not correctly express the present law of California. Every reference to the quoted language from the first opinion in *Gambert* v. *Hart* found in subsequent decisions has been couched in terms of disapproval.

In *Floro* v. *Lawton,* 187 Cal.App.2d 657 [10 Cal.Rptr. 98] (hg. den.), a legal malpractice case, the plaintiff offered no expert testimony. In an opinion affirming a judgment in favor of the defendant lawyers the appellate court stated, at pages 675-676: "However, a review of the authorities leads us to the conclusion that if the *Gambert* case is the law in this state, then we hold to the minority view. (See 12 Vand. L. Rev. 755.) If it is a question of fact then is the matter the subject of expert testimony? Without

expert testimony the confusion could be great indeed in some situations (such as a matter involving trial tactics) because a jury would have no way of knowing what was proper and what was improper and would have no standard by which to compare the lawyers' actions. If experts are called in, then we have the battle of the experts or possibly the 'conspiracy of silence.' In any event it makes no particular difference in this case. If it was a question of law we think the court properly disposed of the matter. If it was a question of fact, which required expert testimony, the plaintiff produced no expert testimony. If it was a question of fact and expert testimony was not required the plaintiff failed completely in several essential respects to establish his claim."

■ In *Ishmael* v. *Millington,* 241 Cal.App.2d 520 [50 Cal.Rptr. 592], a legal malpractice action, a summary judgment in favor of the defendant attorney was reversed. The opinion states the law as follows at pages 525-526: "In any negligence action the existence of a duty of care owed by the defendant to the plaintiff is a question of law for the court. (*Amaya* v. *Home Ice etc. Co.,* 59 Cal.2d 295, 307-308 [29 Cal.Rptr. 33, 379 P.2d 513].) If a duty exists, the complementary degree of care exacted of the defendant —usually that of a reasonable man of ordinary prudence in a like situation —is also declared by law. (Prosser on Torts (3d ed.) pp. 153, 207; Rest.2d Torts, § 328B.) ■ Breach of duty is usually a fact issue for the jury; if the circumstances permit a reasonable doubt whether the defendant's conduct violates the boundaries of ordinary care, the doubt must be resolved as an issue of fact by the jury rather than of law by the court. (*Warner* v. *Santa Catalina Island Co.,* 44 Cal.2d 310, 318 [282 P.2d 12]; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 217 [157 P.2d 372, 158 A.L.R. 782].) ■ Given a breach of duty by the defendant, the decision whether that breach caused the damage (that is, causation in fact) is again within the jury's domain; but where reasonable men will not dispute the absence of causality, the court may take the decision from the jury and treat the question as one of law. (*Basin Oil Co.* v. *Baash-Ross Tool Co.,* 125 Cal. App.2d 578, 603 [271 P.2d 122]; see 2 Witkin, Summary of Cal. Law (1960) 1483-1484; Rest.2d Torts, § 434; Prosser, *Proximate Cause in California,* 38 Cal.L.Rev. 369, 375-383, 420-421.)"

In a footnote to the foregoing text, the following is stated at page 525: "An early California decision states that when the facts of a legal malpractice action are ascertained, the question of negligence is one of law for the court. (*Gambert* v. *Hart,* 44 Cal. 542, 552.) The *Gambert* statement is discussed with obvious misgivings in *Floro* v. *Lawton,* 187 Cal.App.2d 657, 674-676 [10 Cal.Rptr. 98].) The notion of attorneys' negligence as an issue of law is contrary to the weight of authority in other states. (See

Wade, *The Attorney's Liability for Negligence* (reprinted in Roady and Anderson, *Professional Negligence*) 217, 228.) It is also contrary to the modern California concept that the legal malpractice suit is but one variety of negligence action, governed by the general doctrines of pleading and proof prevailing in negligence actions. (*Hege* v. *Worthington, Park & Worthington, supra,* 209 Cal.App.2d at p. 677; *Modica* v. *Crist, supra,* 129 Cal.App.2d at p. 146.)"

In *Lysick* v. *Walcom,* 258 Cal.App.2d 136 [65 Cal.Rptr. 406, 28 A.L.R.3d 368], judgment in favor of the defendant attorney was entered upon a jury verdict. The testimony of two local lawyers offered by plaintiff on the issue of negligence had been admitted. In *reversing* the judgment the Court of Appeal held that the defendant had been guilty of negligence *as a matter of law* and that the issues of proximate cause and damages were the only issues properly submitted to the jury in view of the evidence in that case. ■■■ The opinion contains the following statement of the law at pages 155-156: "Plaintiffs contend that in a malpractice action the expert testimony of a witness is conclusive upon the jury and that, therefore, it was error for the court to instruct the jury that it could disregard the uncontradicted testimony of plaintiffs' two expert witnesses as to the fact of defendant's failure to comply with the appropriate standard of care in the instant case. This contention has merit. Expert evidence in a malpractice suit is conclusive as to the proof of the prevailing standard of skill and learning in the locality and of the propriety of particular conduct by the practitioner in particular instances because such standard and skill is not a matter of general knowledge and can only be supplied by expert testimony. (*Engelking* v. *Carlson,* 13 Cal.2d 216, 221 [88 P.2d 695]; *Stephenson* v. *Kaiser Foundation Hospitals,* 203 Cal.App.2d 631, 635 [21 Cal.Rptr. 646].) This rule has been applied in California to medical malpractice cases, and while no cases have been found in this state applying the rule to legal malpractice, there is no reason why the rules of evidence for malpractice against a lawyer should not be the same as those governing cases against doctors. It has been so held in other jurisdictions. (See *Olson* v. *North,* 276 Ill.App. 457, 477, 495; *Dorf* v. *Relles* (7th Cir. 1966) 355 F.2d 488, 491-494.) ■■■ Accordingly, when the matter in issue is within the knowledge of experts only and not within the common knowledge of laymen, expert evidence is conclusive and cannot be disregarded. (*Engelking* v. *Carlson, supra; Danielson* v. *Roche,* 109 Cal.App.2d 832, 835 [241 P.2d 1028]; *Peters* v. *Sacramento City Employees' Retirement System,* 27 Cal.App.2d 10, 15 [80 P.2d 179].)"

*The Trial Court Neither Abused Its Discretion Nor Committed Prejudicial Error In Limiting The Testimony Of Defendant's Expert Witnesses.*

In the first place, as our recitals of the record have indicated, the trial court permitted defendant to introduce expert testimony very substantially broader in scope and greater in quantity than was contemplated by the stipulated understanding pursuant to which defendant's request for a continuance was granted. In the second place, in view of the unquestionable deficiencies in the escrow instructions drafted by defendant, the only issues actually remaining for the jury's determination were (1) whether or not the defendant had reasonably relied upon the alleged custom and usage concerning which his expert witnesses had testified; (2) whether or not defendant's negligence was a proximate cause of plaintiff's damages; and (3) the issue as to the *amount* of damages.

The evidentiary situation in the case at bench is very similar to that described in *Lysick* v. *Walcom, supra,* 258 Cal.App.2d 136, at page 150 et seq.

The inadequacy of the escrow instructions to afford plaintiff the protection which the circumstances of the transaction involved in this case obviously required is undeniable and virtually conceded. No lawyer with knowledge of the most elementary rules of law governing such transactions would have failed to insist upon more adequate provisions to insure that all of the proceeds of the $30,000 loan, which was to be given security prior to that of his client's purchase money lien, would be used to improve the property.

The teachings of hindsight were not necessary to prove that it was negligent and hazardous to fail to provide such protection. This truth is emphasized by the fact that there was no requirement that the construction loan would be obtained from an institutional lender which could be relied upon to see that the proceeds of the loan were properly used to improve the real property. Moreover, it is an apparent fact that defendant made no inquiry or investigation for the purpose of ascertaining the reliability, financial or otherwise, of the purchaser or the value of the other property which he had promised to encumber as additional security.

In these circumstances it is understandable that defendant and his trial counsel based their defense entirely upon the contention that it was not the conceded deficiencies in the escrow instructions prepared by defendant, but rather it was the mistake or misconduct of the City National Bank as escrow agent, which constituted the proximate cause of plaintiff's loss. The only possible basis upon which defendant could claim freedom from negligence was his contention that he had justifiably relied upon an asserted

custom and practice among escrow agents which the City National Bank violated when it delivered the two deeds of trust for recordation. This contention necessarily implies that defendant contemplated the taking of further unspecified steps to protect his client's interests prior to the closing of the escrow.

Since the trial court submitted the issue of defendant's negligence to the jury upon legally correct instructions, we need not decide the arguable contention that defendant was guilty of negligence as a matter of law. The trial court permitted defendant to introduce the only expert testimony which would have been consistent with the theory of his defense.

### The Instructions Given The Jury Were Correct And Adequate.

Defendant does not question the correctness of the trial court's instructions defining the standard of professional skill and care required of attorneys at law but argues only that these instructions served to compound the errors which he contends were committed in the rulings of the court admitting the expert testimony by plaintiff and limiting that offered by the defendant.

We have held that there was no error in the court's rulings and we hold that the instructions given the jury were both correct and adequate. ■ Defendant does not claim that the trial court erred in refusing to give any instruction requested by him. He argues, however, that the court erred in failing *sua sponte* to instruct the jury regarding the duty of escrow holders in following escrow instructions. This argument is untenable.

■ As stated in *Hyde* v. *Avalon Air Transport, Inc.*, 243 Cal.App.2d 88, 93 [52 Cal.Rptr. 309]: "[A] litigant is entitled to have the jury instructed on all theories of the case which find support in the pleadings and the evidence. No one questions this fundamental right. It is, however, just that, a right—a right the litigant has the privilege of exercising in a civil action. It was not the duty of the trial judge to sift the evidence and research the law in order to determine every possible theory the pleadings and the evidence of each party might suggest, and to compose instructions to cover them. That duty rests on the attorneys in civil cases. In *Korakakis* v. *Freeman,* 178 Cal.App.2d 331, it was held, at page 335 [2 Cal.Rptr. 802]: 'A party may not complain of the trial court's refusal to give an instruction unless he requests it specifically and it is not objectionable upon any grounds.' (See *Carbaugh* v. *White Bus Line,* 51 Cal.App. 1, 5-6 [195 P. 1066]; *Blair* v. *Guarantee Title Co., Inc.,* 103 Cal.App. 260, 272 [284 P. 719].) The foregoing rule is implicit in Code of Civil Procedure section 607a, which requires 'counsel for the respective parties, before the first witness is sworn, to deliver to the judge presiding at the trial, and serve upon

opposing counsel, all proposed instructions to the jury covering the law as disclosed by the pleadings.' "

 The trial court's instructions clearly advised the jury that plaintiff could not recover unless she had proved by a preponderance of the evidence that defendant's negligence was a proximate cause of her injury. Defendant's argument fails to recognize that an attorney's negligence need not be the *sole* cause of the client's loss in order to subject him to liability. That is to say, where there is causation in fact it need not be the sole proximate cause. (*Modica* v. *Crist,* 129 Cal.App.2d 144, 146 [276 P.2d 614]; *Ishmael* v. *Millington, supra,* 241 Cal.App.2d 520, 529; *Lysick* v. *Walcom, supra,* 258 Cal.App.2d 136, 153, fn. 7.)

## Conclusion

We reject appellant's additional assignments of error deeming them not sufficiently substantial to merit further discussion. The contention that the trial court erred in denying defendant's motions for a directed verdict, for a new trial, and for judgment notwithstanding the verdict is predicated upon the assignments of error which we have rejected as unmeritorious. It is unquestioned and unquestionable that the implied findings of the jury upon the issues of negligence, proximate cause, and damages are supported by substantial evidence.

The judgment and the order denying defendant's motion for judgment notwithstanding the verdict are affirmed.

Compton, J., concurred.

**FLEMING, J.**—I concur in the opinion but find an additional basis for defendant's liability, viz., his negligence in allowing his client to be defrauded and swindled out of her property.

Under the purported sale of plaintiff's real property for $60,000, the purchaser put up nothing and used the seller's own property as security to borrow $30,000, out of which he paid $10,000 to the seller and pocketed the balance of $20,000 for his own use. When the transaction is stripped of its documentary window dressing, it becomes readily apparent that plaintiff was relieved of assets of a value of $20,000. Such a transaction amounts to elementary fraud, for protection against which persons employ lawyers to provide them with advice and counsel. If a lawyer fails to provide advice and counsel of sufficient quality to enable his client to protect herself against such an obvious swindle, he may be held liable for the ensuing loss.

The foregoing covers the bare-faced swindle. The more genteel, dressed-

up version concocted by the buyer and his agents was only slightly less rapacious. Under this version the buyer agreed to put up $10,000, and the seller agreed to subordinate the unpaid balance of the purchase price, $50,000, to a $275,000 construction loan. Even if it should turn out that the lien ahead of plaintiff represented moneys actually expended in improving the property, plaintiff's security would remain wholly vulnerable to a complete wipe-out if any mild deflation in real estate values occurred, for her security interest would have been subordinated to 82 percent of the total amount put into the venture, and the entire loan of $275,000 would have to be repaid before she could realize anything on her security. Under such a deal plaintiff would be saddled with the primary risk of speculative loss and wholly excluded from any hope of speculative gain. These terms are so one-sided and so unfair as to be only slightly less fraudulent than the bald fraud which actually took place. (Cf. *Handy* v. *Gordon,* 65 Cal.2d 578 [55 Cal.Rptr. 769, 422 P.2d 329, 26 A.L.R.3d 848].) Here again, a lawyer who has been employed to represent the interests of the seller is required to provide advice and counsel which will enable his client to protect herself against such imposition, and if he does not adequately do this he may become liable for losses suffered by his client as a result of his negligence.

Needless to say, these considerations have special application to the case at bench, where the client was an 80-year-old, semi-literate widow of limited means and limited business experience. In representing such clients lawyers are required to exercise extra caution, for these clients are not equipped to protect themselves.

A petition for a rehearing was denied March 2, 1971, and appellant's petition for a hearing by the Supreme Court was denied April 29, 1971. Peters, J., was of the opinion that the petition should be granted.