Filed 3/20/25  Manthey v. Beltran CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| JANIECE DARLENE MANTHEY et al. | D083701 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. RIC1902590) |
| JOSE LUIS CUELLAR BELTRAN et al. | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Riverside, Chad Firetag, Judge.  Affirmed.

Horvitz & Levy, Mitchell C. Tilner, Robert H. Wright; Lagasse Branch Bell Kinkead, Zubin Farinpour, and Jeffrey Tsao for Defendants and Appellants.

McGee, Lerer & Associates, Dean Ogrin; Esner, Chang, Boyer & Murphy, Andrew N. Chang, Stuart B. Esner, and Rowena J. Dizon for Plaintiffs and Respondents.

# I

# INTRODUCTION

Defendant Jose Luis Cuellar Beltran got into a serious automobile accident with plaintiffs Janiece Darlene Manthey and Nathan Drake while Beltran was driving a semi-trailer truck owned by his employer, defendant Barillas Trucking, Inc. (Barillas).  After a three-week trial, a jury found Beltran was negligent in the operation of the truck, Barillas was vicariously liable for Beltran's negligence, and Manthey was not comparatively negligent in the operation of her vehicle.  The jury awarded $5,310,362 in compensatory damages to Manthey and $8,650,000 in compensatory damages to Drake.  Thereafter, the trial court entered judgment for the plaintiffs.

The defendants appeal the judgment.  They contend: (1) the trial court erred by admitting evidence of prior automobile collisions involving other truck drivers employed by Barillas; (2) the court erred by admitting evidence of Barillas' postaccident investigation into the collision giving rise to this case; and (3) insufficient evidence supported the jury's finding that Manthey was not comparatively negligent.  We reject these arguments and affirm the judgment.

# II

# BACKGROUND[1]

A. *Factual Background*

On March 21, 2018, at about 4:45 p.m., Manthey drove her Kia Soul westbound on the Interstate 10 freeway near Palm Springs.  She drove in the

---

[1] "[I]n summarizing the facts on appeal we 'must consider the evidence in the light most favorable to the prevailing part[ies], giving [them] the benefit of every reasonable inference, and resolving conflicts in support of the judgment.' " (*Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 642, fn. 3, italics omitted.)

number two lane, the second lane from the left, at a speed of 70 to 75 miles per hour. Her husband, Drake, slept in a reclined position in the front passenger seat. Another motorist, Karen A., drove a Ford C-Max in front of Manthey in the number two lane.

Unbeknownst to Manthey and Karen, an aluminum ladder fell off a vehicle in front of them and obstructed the entire number three lane and a portion of the number two lane. Traffic came to an immediate halt. Karen braked hard and safely came to a stop a few feet from the vehicle in front of her. Manthey also braked and adjusted her vehicle's position within its lane to try to avoid the ladder. However, Manthey was unable to come to a full stop quickly enough and rear-ended Karen in a collision that Manthey described as being "very light." According to an accident reconstructionist, Manthey's vehicle was traveling at a speed of 11 to 16 miles per hour when it struck Karen's stationary vehicle. Neither vehicle's airbags deployed and Karen did not sustain any serious injuries from the collision.

Meanwhile, Beltran drove on the freeway behind Karen and Manthey in a 68,500-pound semi-trailer truck loaded with cargo. Beltran drove the truck in the course of his regular employment with his employer, Barillas, which owned the truck.[2] Beltran drove in the number three lane, but abruptly moved into the number two lane to try to avoid the ladder in the road. Within three seconds of the fender-bender between Manthey and Karen, Beltran's truck forcefully collided with Manthey's vehicle in the number two lane. According to an accident reconstructionist, the truck was traveling at a speed of 48 miles per hour when it struck Manthey's stationary

---

[2]    Barillas owned about 25 trucks and employed about 20 drivers at the time of the automobile collision between Beltran and Manthey.

3

vehicle. In Manthey's words, the impact "felt like an explosion." Manthey's vehicle rolled over 1.75 times and came to a rest on its side.

The plaintiffs suffered grave injuries from the accident. Manthey sustained multiple fractures on her arm, a dislocated elbow, and a hematoma across her thigh. Drake sustained a subdural hematoma and severe traumatic brain injury.

B. *Procedural Background*

Manthey and Drake sued Beltran and Barillas, alleging Beltran was directly liable for his motor vehicle negligence and Barillas was vicariously liable for the negligence of its employee, Beltran.

    i.    *Evidence Spoliation Issues*

One of the central disputed issues that arose in the discovery phase of the case (and at trial) was whether, when, and to what extent Beltran braked and decelerated his truck prior to the collision. The truck was equipped with an event data recorder (EDR), known colloquially as a black box, which recorded key information such as the speed of the truck and whether Beltran braked in the minute preceding the accident. At his deposition, Barillas' founder and owner testified that his company had sold the truck after the collision, leaving the plaintiffs unable to access any of the information recorded on the black box. As it turns out, Barillas had not sold the truck. Instead, Barillas was simply involved in sales discussions with a prospective buyer and the sale never materialized.

Nearly a year later, the plaintiffs—seemingly doubtful that Barillas had sold the truck—propounded written discovery requesting that Barillas produce the truck and its black box. Although Barillas still had the truck in its possession, it did not produce the truck or its black box as demanded. Instead, within a matter of weeks of its receipt of the discovery requests,

4

Barillas sold the truck.  In light of Barillas' discovery conduct and its potentially willful suppression or spoliation of evidence, the trial court instructed the jury with CACI Nos. 203 and 204 at trial.[3]

### ii. *Motion for Leave to Amend the Complaint*

Prior to trial, the plaintiffs advised the defendants and the trial court they intended to seek leave of court to amend their complaint to assert a cause of action against Barillas for negligent hiring, training, and supervision.[4]  The court did not rule on the amendment request prior to trial. Rather, it deferred consideration of the request until trial, at which point it would assess whether to permit amendment to conform to proof.

The issue of amendment next arose after the plaintiffs rested their case in chief.  At that time, plaintiffs' counsel orally requested leave to amend the complaint and argued there was sufficient evidence to support a finding that Barillas was directly liable for its own negligence, not merely vicariously liable for Beltran's negligence.  Defense counsel did not oppose and the court granted the amendment request.  In doing so, the court stated, "I will grant leave to amend to add a second cause of action against Barillas Trucking for negligent hiring and supervision."  The corresponding minute order for the

---

[3]     CACI No. 203 (Party Having Power to Produce Better Evidence) provides, "You may consider the ability of each party to provide evidence.  If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence."

CACI No. 204 (Willful Suppression of Evidence) states, "You may consider whether one party intentionally concealed or destroyed evidence.  If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party."

[4]     The appellate record does not contain a written motion for leave to amend the complaint.  However, the court and the parties discussed plaintiffs' intention to seek leave to amend the complaint prior to the parties' opening statements on the first day of trial.

court hearing stated, "Leave to amend Complaint of JANIECE DARLENE MANTHEY granted, with 2 days to leave to amend." Although the plaintiffs received leave to amend, there is no indication in the record that they filed a proposed amendment or proposed amended complaint with their request for leave, or that they filed an amended complaint after the court granted leave to amend.

The issue of amendment arose one final time at trial. Midway through the defense case in chief, plaintiffs' counsel informed the court that the plaintiffs no longer intended to pursue a direct negligence cause of action against Barillas. In response, the court stated, "So I'll have our minutes reflect then that the plaintiff[s] will – I guess, again, I don't know if you actually – I granted the motion to amend the Complaint, but at this point, I'll show that plaintiff has withdrawn their request to amend their Complaint to include negligent hiring, supervision, or training cause of action. So the only cause of action will be what it has been, which is motor vehicle negligence. That's the only thing it has been this whole time." The corresponding minute order states, "Plaintiff has withdrawn request to Amend Complaint, leaving Motor Vehicle Negligence as the remaining Cause of Action."

iii. *Jury Verdict*

At the conclusion of trial, the jury unanimously found Beltran and the unknown motorist who caused the ladder to fall were negligent, their negligence harmed the plaintiffs, and Manthey was not comparatively negligent. It found Beltran was Barillas' employee and he acted within the scope of his employment when he caused harm to the plaintiffs. The jury awarded $5,310,362 in compensatory damages to Manthey, consisting of $220,362 in past economic damages, $90,000 in future economic damages, $2 million in past noneconomic loss, and $3 million in future noneconomic loss;

6

and it awarded $8,650,000 in compensatory damages to Drake, consisting of $1,800,000 in future economic damages, $2,550,000 in past noneconomic loss, and $4,300,000 in future noneconomic loss. The jury apportioned fault as follows: 85 percent to Beltran, 15 percent to the unknown motorist who caused the ladder to be on the freeway, and 0 percent to Manthey.

The defendants moved for a new trial on grounds that the evidence was insufficient to support the verdict. The court denied the motion and entered judgment for the plaintiffs. The court subsequently entered an amended judgment clarifying that the plaintiffs were entitled to recover 100 percent of their economic damages and 85 percent of their noneconomic damages from the defendants.

## III

## DISCUSSION

A. *Defendants Have Not Proven The Trial Court Prejudicially Erred by Admitting Evidence of Accidents Involving Other Barillas Employees*

The defendants contend we must reverse the judgment and remand the matter for a new trial because the trial court erroneously admitted irrelevant evidence of past automobile accidents involving Barillas employees other than Beltran. As we shall explain, the defendants have forfeited their claim that the admitted evidence was irrelevant. Further, assuming evidentiary error, the defendants have not established they suffered prejudice from the admission of the challenged evidence.

  i.   *Additional Background*

Before trial, the defendants filed written motions in limine to exclude certain evidence at trial. In one or more of these motions in limine, the defendants sought to exclude evidence that Beltran was involved in an automobile collision in April 2016, two years before his collision with Manthey. The defendants did not include their motions in limine in the

7

appellate record. However, based on what we can discern from the court's statements at trial, it appears the court granted the pertinent motion(s) and excluded the evidence of Beltran's prior collision under Evidence Code section 352.[5]

On the first day of trial, defense counsel advised the court he "wanted to just raise a concern" that the plaintiffs may elicit evidence pertaining to the defendants' postaccident investigation into the collision between Beltran and the plaintiffs. This evidence will be discussed later in the opinion. (See *post* Part III(B).) After defense counsel argued that the postaccident investigation evidence was inadmissible, he stated the defense had another "concern" the plaintiffs may elicit evidence of past automobile collisions involving Barillas employees other than Beltran. Defense counsel did not elaborate on the concern, nor did he specifically object to the admission of evidence concerning other Barillas employees' automobile collisions.

In reply, plaintiffs' counsel stated that the company's "investigation and learning what happened from [past] incident[s] … and [its] training [its] crew to get better [went] to the heart of the conduct, as well as negligent training and supervision." Plaintiffs' counsel added, "[W]e are alleging sort of an ostrich putting [its] head in the sand type of situation." Then, plaintiffs' counsel stated that defense counsel seemingly believed "the ruling to exclude Mr. Beltran's 2016 April prior incident based on improper character evidence … also [applied] to any other accidents that the company had," and plaintiffs' counsel disagreed with defense counsel's apparent assumption.

---

5    Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The trial court responded by stating, "I'm not modifying my ruling with respect to Mr. Beltran's incident because I do find, I think under the circumstances, under 352, for the reasons I stated, it should be excluded. [¶] But I think as to any others for purposes of establishing your negligent training and supervision … cause of action, I don't have a problem necessarily with bringing up that information. [¶] I think it's up to the jury whether … [the] accidents[] would constitute or establish a cause of action for that. [¶] So at this point – maybe I'll say this. At this point, not hearing the evidence, that will come when you seek to amend subject to proof. … [¶] We'll wait and see how the evidence plays itself out. So let me say this. By my ruling, I'm not excluding the prior incidents at this point, only just the Beltran [accident] … for the reasons that I stated already."

Ultimately, the plaintiffs elicited trial testimony from Barillas' trucking manager, Jacquelin Renteria, that: (1) Renteria had reviewed twelve traffic collision reports involving Barillas drivers since she started working for the company in 2012; (2) Barillas relied on its drivers' statements to assess what happened during the collisions; and (3) Renteria was aware Barillas had counseled or disciplined one or two of its drivers about driving safety since she started working for the company.

   ii.   *Defendants Have Not Preserved Their Appellate Claim of Error or*
         *Demonstrated Prejudice from the Claimed Error*

On appeal, the defendants argue the trial court committed prejudicial error by admitting evidence of prior automobile collisions involving Barillas employees other than Beltran because such evidence was irrelevant to the motor vehicle negligence cause of action against Beltran and the proposed negligent hiring and supervision cause of action against Barillas. Although the defendants devote the vast majority of their briefing to arguing that such evidence was irrelevant, they also characterize the evidence in passing as

9

inflammatory "character evidence."  In response, the plaintiffs contend the defendants forfeited their claim of error by failing to make a timely and specific objection to the admission of the evidence in the trial court.  We agree with the plaintiffs.

Evidence Code section 353 provides that a judgment may not be reversed due to the erroneous admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion."  (Evid. Code. § 353, subd. (a).)  "A proper objection must ' " 'fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling.' " ' "  (*People v. Jackson* (2016) 1 Cal.5th 269, 328; *People v. Mills* (2010) 48 Cal.4th 158, 207 [" ' "Specificity is required both to enable the court to make an informed ruling on the ... objection and to enable the party proffering the evidence to cure the defect in the evidence." ' "].)  "[A party] forfeits an argument on appeal where he fails to object at all to the evidence in the trial court or when he objects on substantively distinct grounds."  (*People v. Flinner* (2020) 10 Cal.5th 686, 726; *Jackson*, at p. 328 [" ' "[F]ailure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable.' "].)

As noted, the defendants did not seek to exclude the evidence of prior automobile collisions involving other Barillas employees in any of their motions in limine.  They also did not object to the admission of such evidence or request that the trial court exclude the evidence during their exchange with the court on the first day of trial.  Further, they did not interpose specific and contemporaneous evidentiary objections at the time the plaintiffs

elicited the challenged testimony from Renteria. Instead, on the first day of trial, defense counsel merely stated the defendants had a concern about the evidence, without specifying the nature of the concern or identifying the evidentiary objections the defendants now assert for the first time on appeal. Defense counsel's vague articulation of concern was insufficient to preserve the relevance arguments the defendants now assert on appeal.

Despite the defendants' failure to object to the evidence or seek its exclusion, the defendants argue we should address their relevance claim on appeal because plaintiffs' counsel supposedly filled in any gaps that the defense left open with its generic statement of concern. The defendants emphasize that, after defense counsel stated it had a concern, plaintiffs' counsel referenced the court's in limine ruling excluding Beltran's April 2016 automobile accident as improper character evidence. They argue this reference shows the trial court and the parties all understood the defendants were objecting on relevance grounds to the admission of evidence concerning other employees' collisions. The defendants' argument is not persuasive.

"Evidence of a character trait has a 'tendency in reason' [citation] to prove the person's conduct in conformity with that trait on a particular occasion. Indeed, the Law Revision Commission comment to Evidence Code section 1100 notes that '[e]vidence of a person's character or a trait of his character is relevant ... when offered as circumstantial evidence of his conduct in conformity with such character or trait of character.' [Citation.] The general rule against its use for this purpose [citation] is founded not on lack of relevance but on '[e]xtrinsic [p]olicies' [citation] relating to prejudice, the potential for the jury to be distracted and base its decision on the parties' characters themselves, and the potential for confusion of the issues and extended inquiry into collateral matters." (*People v. Demetrulias* (2006) 39

11

Cal.4th 1, 21.) Thus, a party does not preserve for appellate review a claim that evidence is irrelevant by objecting on the separate basis that the evidence at issue is improper character evidence, or vice versa. (*People v. Valdez* (2012) 55 Cal.4th 82, 130 [defendant did not preserve improper character evidence claim by objecting on grounds the evidence was irrelevant, cumulative, lacking in foundation, and prejudicial]; *Demetrulias*, 39 Cal.4th at pp. 20–21 [relevance objections did not preserve claim that court admitted improper character evidence].) Applying these principles here, *the plaintiffs' reference to a prior in limine ruling concerning improper character evidence does not substitute for a specific relevance objection from the defense*.

Even assuming the trial court erred by admitting the evidence, the claimed error was harmless. As noted, the admitted evidence consists of testimony from Barillas' trucking manager, Renteria, that she had reviewed twelve traffic collision reports involving Barillas drivers since she began working for the company a decade earlier, the company relied on its drivers' statements to evaluate the collisions, and she was aware the company had counseled or disciplined one or two of its drivers about driving safety.

Renteria's testimony was exceedingly brief, constituting a single page and a half of the 1,614-page trial transcript. The testimony was not only fleeting, but also innocuous. Indeed, it could not have been especially surprising or inflammatory for the jury to learn that some of the dozens of drivers employed by Barillas—a trucking company—were involved in automobile collisions over the span of a decade. Further, Renteria did not discuss any specific details about the other Barillas employees' automobile collisions, let alone suggest the employees were negligent in connection with the collisions. Instead, Renteria stated only that she reviewed the traffic collision reports for collisions involving other employees.

12

There was also strong evidence to support the jury's unanimous finding that Beltran was negligent in the operation of his truck and that his negligence harmed the plaintiffs. For example, the plaintiffs elicited expert testimony that Beltran's truck was traveling at a high rate of speed when it collided with Manthey's vehicle and Beltran failed to pay sufficient attention to upcoming traffic and road patterns, follow the vehicle in front of him at a safe driving distance, or regulate his speed properly. Beltran himself admitted he did not even notice the ladder in the roadway until it was just 40 feet in front of him. The jury also had ample reason to distrust the defense's narrative that Beltran acted with reasonable care. Beltran gave conflicting accounts of his conduct immediately before the collision.[6] And, due to the defendants' potentially willful spoliation of evidence, the jury was instructed it could infer the information recorded on the truck's missing black box would have been unfavorable to the defense. For all these reasons, the defendants have not shown " 'it is reasonably probable that they would have received a more favorable result at trial had the error not occurred.' " (*Mountain View Police Dept. v. Krepchin* (2024) 106 Cal.App.5th 480, 506.)

B. *Defendants Have Not Proven The Trial Court Prejudicially Erred by Admitting Evidence of Barillas' Postaccident Investigation*

Next, the defendants argue we must reverse the judgment because the trial court erroneously admitted evidence of Barillas' postaccident investigation into the collision between Beltran and Manthey. In particular, the defendants argue the court erred by admitting irrelevant testimony from

___

[6] In a postaccident statement to a California Highway Patrol officer, Beltran admitted he switched lanes from the number three lane to the number two lane to avoid the ladder in the road. However, at trial, he denied he changed lanes and testified that Manthey's and Karen's vehicles entered his lane after they collided with one another—testimony that conflicted with all of the other witnesses' accounts of the incident.

Renteria that Barillas concluded Beltran was not at fault for the collision with Manthey, Barillas made this conclusion a day after the collision based on its review of the traffic collision report, and Barillas did not counsel Beltran after the collision because it believed he had acted properly under emergency conditions in response to a hazard in the roadway.[7]

Assuming the defendants' argument is preserved for our consideration and meritorious, reversal is unwarranted because the defendants have not shown the error was prejudicial. Like the testimony pertaining to other Barillas' employees' prior collisions, the testimony concerning Barillas' postaccident investigation was both limited and harmless. It consumed less than half of one page of the 1,614-page trial transcript—mere moments in the context of the overall three-week trial. The testimony was neither inflammatory nor harmful to Beltran; if anything, it may have helped him by corroborating the version of events he conveyed to the jury. Further, as noted, the plaintiffs presented strong evidence of Beltran's negligence and the jury was instructed it could draw adverse inferences against the defense based on Barillas' potentially willful spoliation of material evidence bearing on Beltran's negligence. There is no reasonable probability the jury would have returned a more favorable verdict for the defense if the court had excluded Renteria's brief testimony that Barillas reviewed the traffic collision report and believed its employee bore no fault for the collision.

C. *Sufficient Evidence Supported the Jury's Finding That Manthey was Not Comparatively Negligent*

Finally, the defendants contend we must reverse the judgment because there was insufficient evidence to support the jury's finding that Manthey was not comparatively negligent. We disagree.

---

[7] The defendants do not challenge the admission of any evidence that Barillas spoliated evidence by selling the truck involved in the collision.

California's " 'comparative fault' doctrine is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an 'equitable apportionment or allocation of loss.' " (*Knight v. Jewett* (1992) 3 Cal.4th 296, 314.) In a comparative fault system, "a plaintiff's negligence reduces, but does not totally bar, a plaintiff's recovery against a negligent defendant." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 827.) Comparative fault presents a question of fact to be decided by the trier of fact. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 462; see *Williams v. Hilb, Rogal & Hobbs Ins. Services of California, Inc.* (2009) 177 Cal.App.4th 624, 643 ["findings on questions of fault and comparative fault … are … quintessentially matters of fact"].)

Generally, the "defendant has the burden of establishing that some nonzero percentage of fault is properly attributed to the plaintiff, other defendants, or nonparties to the action." (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1285.) Therefore, in the present case, the defendants

bore the burden at trial of establishing that Manthey had some nonzero percentage of comparative fault for the injuries the plaintiffs sustained.[8]

Where, as here, " ' "the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals," ' generally ' "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 333, quoting *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

The evidence presented at trial did not compel a finding that Manthey was comparatively negligent as a matter of law. On the day of the accident, Manthey drove her vehicle in daytime conditions in the number two lane at

---

8      In their appellate briefs, the defendants cite a series of decisions discussing or applying the doctrine of res ipsa loquitur—*Mercer v. Perez* (1968) 68 Cal.2d 104, *Beck v. Kessler* (1965) 235 Cal.App.2d 331, and *Sweeney v. Pozarelli* (1964) 228 Cal.App.2d 585—to suggest that an inference or presumption of comparative fault should have applied because Manthey rear-ended Karen's stationary vehicle. However, they never argued that res ipsa loquitur applied in the proceedings below, nor did they request a jury instruction on the doctrine. The defendants may not invoke res ipsa loquitur for the first time on appeal to obtain a reversal of the judgment. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 [" ' "New theories of defense, just like new theories of liability, may not be asserted for the first time on appeal." ' "]; see *Barrera v. De La Torre* (1957) 48 Cal.2d 166, 170 ["[P]laintiffs did not request an instruction on the doctrine of res ipsa loquitur. Under such circumstances they may not argue on appeal that the court erred in failing to give a specific instruction."]; *Hyde v. Avalon Air Transport, Inc.* (1966) 243 Cal.App.2d 88, 93 [plaintiff forfeited reliance on res ipsa loquitur theory by failing to request jury instruction on it].)

or near the speed limit while wearing her seatbelt. At trial, she testified she drove with both of her hands placed on the steering wheel. As Karen explained to the jury, traffic came "to a very quick halt," and vehicles were "suddenly slowing down." According to Manthey, she used her observation skills to detect this abrupt halt of traffic. She testified that, in response to the sudden traffic shift, she slowed her vehicle to meet the new traffic conditions. She testified she then observed the ladder obstructing multiple lanes of the freeway and tried to avoid the ladder both by slowing her vehicle further and adjusting its position within the lane. Ultimately, Manthey collided with the vehicle in front of her, but she described it as a "[v]ery light collision, [a] fender bender," with "[n]o real hard impact."

Faced with this evidence, a rational jury could find that Manthey exercised reasonable care under the circumstances. Because a rational jury could reach this conclusion from the evidence presented at trial, we reject the defendants' argument that Manthey bore comparative fault as a matter of law for the significant harms the plaintiffs endured.

IV

DISPOSITION

The judgment is affirmed. Respondents are awarded their appellate costs.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

CASTILLO, J.

17